ANN MARIE LAWRENCE *v*. ANDREW S. LAWRENCE
(AC 26265)

Lavery, C. J., and Flynn and Harper, Js.

Submitted on briefs September 28—officially released November 1, 2005

*David E. Crow, Jr.*, filed a brief for the appellant (defendant).

*Pamela R. Hershinson* filed a brief for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant, Andrew S. Lawrence, appeals from the trial court's postdissolution judgment holding him in contempt for failing to pay child support to the plaintiff, Ann Marie Lawrence. On appeal, the defendant claims that the court improperly determined that he was not entitled to a credit for his prepayment

of the support obligation. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the defendant's appeal. The parties were married on August 30, 1986, and have two children. The marriage was dissolved on May 19, 1995. The court ordered that the parties share joint legal custody of the children, with their primary residence to be with the plaintiff. The court further ordered the defendant to pay $180 per week in child support[1] and one dollar per year in alimony.

On June 16, 2003, the defendant filed a motion to enter orders in accordance with an agreement between the parties. As a result of the decision to have the younger child reside with the defendant, his weekly support obligation was decreased to $68. On December 19, 2003, the younger child returned to live with the plaintiff, and, at about that time, the defendant resumed sending the plaintiff $196 per week for support. Neither party filed a motion to modify the support order, even though the younger child had moved back with the plaintiff. On June 4, 2004, the defendant abruptly and unilaterally stopped sending the plaintiff child support.[2]

In October, 2004, the plaintiff filed, inter alia, a motion for contempt, alleging that the defendant had ceased paying the ordered child support. She claimed that the defendant's arrearage totaled $1360. The defendant filed an objection to the plaintiff's motion and argued that, from the time the younger child had moved back with the plaintiff, his obligation had remained at $68 per week and that he had been paying $196 week, resulting in a weekly overpayment of $128. Thus, according to the defendant, from December 19, 2003,

---

[1] This amount subsequently was increased to $196 per week.

[2] Neither child had graduated high school or reached the age of majority at this point.

through November 30, 2004, this overpayment resulted in a credit of $1568 that he could apply against his future payments and therefore justified the cessation of payments.

After the court held hearings on November 29 and December 8, 2004, it found that the defendant wilfully failed to abide by the terms of the support order. It further concluded that "a parent is free to contribute more than the court-ordered amount of child support, and responsible parents frequently do so, when their resources allow. Just as certainly, in this case, with no debt, minimal living expenses, and two homes, [the defendant's] resources allowed him to be more generous than the $68 per week court order. However, those additional funds toward the child's welfare are not a defense to a later wilful failure to pay the child support order for six months."

After finding the defendant in contempt, the court ordered him to pay the plaintiff $1424 plus court costs by February 14, 2005, for the two days that the plaintiff had missed work to attend the hearings. The court further found an arrearage of child support in the amount of $1836 and ordered him to pay the plaintiff that sum by February 28, 2005. This appeal followed.

We begin our analysis by addressing the relevant legal principles and appropriate standard of review. "To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . A finding of contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court . . . ." (Citation omitted; internal quotation marks omitted.) *Sheppard* v. *Sheppard*, 80 Conn. App. 202, 219, 834 A.2d 730 (2003). Our Supreme Court has stated: "The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direc-

tion of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion." (Citation omitted; internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 718, 784 A.2d 890 (2001).

The defendant does not challenge the court's finding that he wilfully stopped making payments on June 4, 2004, or that he had the ability to continue to make the required payments. The defendant has limited the scope of his appeal to the fact that he made overpayments of his court-ordered support starting on December 19, 2003, when the younger child resumed living with the plaintiff. He argues that the $68 per week order was never changed, and that when he resumed payments of $196 per week, the extra $128 per week entitled him to a credit on his support and justified his unilateral decision to cease payment. According to the defendant, it was, therefore, an abuse of the court's discretion to find him in contempt for nonpayment in light of this prepayment. We disagree.

In Connecticut, the general rule is that a court order must be followed until it has been modified or successfully challenged. *Eldridge* v. *Eldridge*, 244 Conn. 523, 530, 710 A.2d 757 (1998); *Behrns* v. *Behrns*, 80 Conn. App. 286, 289, 835 A.2d 68 (2003), cert. denied, 267 Conn. 914, 840 A.2d 1173 (2004).[3] Our Supreme Court

---

[3] To be sure, some court orders are self-executing, either by their terms or by operation of law, and do not require a subsequent modification. See *Eldridge* v. *Eldridge*, supra, 244 Conn. 530. This case, however, does not involve such an order.

repeatedly has advised parties against engaging in "self-help" and has stressed that an "order of the court must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, supra, 258 Conn. 719; see also *Eldridge* v. *Eldridge*, supra, 528–32 (good faith belief that party was justified in suspending alimony payment did not preclude finding of contempt); *Mulholland* v. *Mulholland*, 229 Conn. 643, 648–49, 643 A.2d 246 (1994); *Nunez* v. *Nunez*, 85 Conn. App. 735, 739–40, 858 A.2d 873 (2004).

In the present case, the defendant's younger child moved in with him, and as a result, the court lowered his support payment. The operative order, therefore, required the defendant to pay the plaintiff $68 *per week* in child support. After the child moved back to the plaintiff's residence, the defendant then elected to resume his prior payments of the amount they had been when both children resided with the plaintiff. There is nothing in the record to indicate that the defendant informed the plaintiff, or the court, that he would be using these overpayments as credit against his future support obligation. The defendant, if he intended to make advance payments, could have attempted to reach an agreement with the plaintiff or to seek a modification from the court. Instead, the defendant chose to disregard a key component of the order; that is, *weekly* payments of $68. As a result of being awarded child support, the plaintiff has the right and privilege to determine how and when the funds should be spent. See *Goold* v. *Goold*, 11 Conn. App. 268, 277, 527 A.2d 696, cert. denied, 204 Conn. 810, 528 A.2d 1156 (1987). The defendant's unilateral decision to prepay his support obligation without the plaintiff's consent reduced her ability to make those decisions and usurped the right to control the disbursement of the support. See id. Furthermore, our Supreme Court has held that even if a

payor of support ultimately is correct with respect to the calculation of the various debits and credits associated with a support order, the court is not precluded from finding him or her in contempt if the payor chooses to engage in self-help and to cease payments without first seeking a modification. *Eldridge* v. *Eldridge*, supra, 244 Conn. 532. "Some courts have recognized that a parent is not entitled as a matter of law to credit for such voluntary expenditures made in a manner other than that specified by the divorce decree. . . . Other courts hold that situations may arise in which equitable considerations would permit a parent to credit, against past due support payments, voluntary expenditures made on behalf of the child. . . . No universal or general principle has been articulated by the latter courts. Rather, the circumstances of each individual case are considered in determining whether credit can be allowed. . . . In all such cases, however, courts have recognized that the decision to allow or disallow credit lies within the sound discretion of the trial court." (Citations omitted.) *Goold* v. *Goold*, supra, 11 Conn. App. 272–73. The mere fact that the defendant in the present case believed that he was entitled to such a credit does not excuse his nonpayment of support, nor does it constitute an abuse of the court's discretion to hold him in contempt.[4]

In light of the defendant's wilful failure to comply with terms of the support order, we cannot conclude that the court abused its discretion in finding him in contempt.

The judgment is affirmed.

---

[4] We also note that our Supreme Court, in both *Eldridge* and *Sablosky*, concluded that the public policy in favor of encouraging parties to seek a judicial resolution of ambiguous judgments rather than seeking self-help was compelling particularly in family cases. See *Behrns* v. *Behrns*, supra, 80 Conn. App. 290.