LINDA K. RISCICA *v.* ROBERT J. RISCICA
(AC 27015)

Flynn, C. J., and Bishop and McLachlan, Js.

---

Argued February 8—officially released May 15, 2007

*Robert J. Riscica*, pro se, the appellant (defendant).

*George J. Markley*, with whom, on the brief, was *Michael A. Meyers*, for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. "In Connecticut, the general rule is that a court order must be followed until it has been

modified or successfully challenged. *Eldridge* v. *Eldridge*, 244 Conn. 523, 530, 710 A.2d 757 (1998); *Behrns* v. *Behrns*, 80 Conn. App. 286, 289, 835 A.2d 68 (2003), cert. denied, 267 Conn. 914, 840 A.2d 1173 (2004). Our Supreme Court repeatedly has advised parties against engaging in 'self-help' and has stressed that an 'order of the court must be obeyed until it has been modified or successfully challenged.' . . . *Sablosky* v. *Sablosky*, [258 Conn. 713, 719, 784 A.2d 890 (2001)]; see also *Eldridge* v. *Eldridge*, supra, 528–32 (good faith belief that party was justified in suspending alimony payment did not preclude finding of contempt); *Mulholland* v. *Mulholland*, 229 Conn. 643, 648–49, 643 A.2d 246 (1994); *Nunez* v. *Nunez*, 85 Conn. App. 735, 739–40, 858 A.2d 873 (2004)." *Lawrence* v. *Lawrence*, 92 Conn. App. 212, 215–16, 883 A.2d 1260 (2005). This case further illustrates why a party should avoid self-help and seek judicial assistance when a modification of a court order is necessary.

The defendant, Robert J. Riscica, appeals from the judgment of the trial court in favor of the plaintiff, Linda K. Riscica, finding the defendant in arrears on his unallocated alimony and child support in the amount of $217,595. On appeal, the defendant claims that the court improperly (1) restricted his evidence as to his defenses of laches and equitable estoppel and (2) concluded that the evidence did not support those defenses. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. The defendant and the plaintiff were married on April 20, 1979, and there were three children born of the marriage: Michael, born on October 15, 1979; Sara, born on March 11, 1983; and Matthew, born on June 5, 1990. The marriage was dissolved on December 2, 1994. As part of the judgment of dissolution, the court incorporated the separation agreement of the parties, which, inter alia, provided that the parties

would have joint physical custody of the three minor children, with primary physical custody granted to the plaintiff. The agreement also provided that the defendant was to pay to the plaintiff unallocated alimony and child support in the amount of $7200 per month through November 30, 2001, and the amount of $5666.67 per month thereafter, until the defendant died, the plaintiff remarried or cohabitated for more than one year, or December 31, 2009. The agreement further provided that in the event alimony terminated, the parties would determine the amount of child support to be paid for the support of the remaining minor children and, if they could not agree, the amount of child support would be decided by the court retroactive to the date of the termination of alimony. There also were other specific situations upon which child support would terminate or the amount of child support could be adjusted.[1]

By motion to show cause served on July 11, 2003,[2] the plaintiff requested that the defendant be held in contempt for failing to comply with the unallocated alimony and child support orders of the court from March 1, 1999. On August 25, 2003, the defendant filed a motion for modification grounded, in part, on changed financial circumstances and that two of the three children had reached the age of majority.[3] Following a July

---

[1] Article III, § 3.2, of the agreement provides in relevant part: "Obligations of support and maintenance for each child mentioned herein shall terminate . . . as said child attains the age of eighteen (18) years . . . or ceases to reside with the Wife under circumstances where the Wife is no longer furnishing the child's support . . . ."

[2] The exact date this motion was filed cannot be ascertained from the record. Although it was dated May 22, 2003, it was not date stamped by the Superior Court, nor was it entered on the Superior Court docket sheet. The summons was signed by the plaintiff's attorney on July 8, 2003, and was served on the defendant on July 11, 2003, by a state marshal. All of these documents are contained within the Superior Court file.

[3] This motion was not acted on by the court apparently because the plaintiff waived any right to additional support at the hearing. It also is noted that the plaintiff remarried in May, 2004, which terminated her right to additional alimony. The plaintiff's attorney also explained to the court, during the July 13, 2005 hearing, that the defendant had a motion for child

13, 2005 hearing, at which the defendant asserted the defenses of laches and equitable estoppel, the court issued a memorandum of decision, dated August 15, 2005, finding the defendant in arrears on the unallocated alimony and child support orders in the amount of $217,595, and ordering the defendant to pay that amount to the plaintiff in weekly installments of $150. The court did not find the defendant's conduct to be wilful or deliberate and, therefore, did not find the defendant in contempt. Although the defendant's motion for modification also was to be considered at the July 13, 2005 hearing, the court did not rule on that motion. This appeal followed.

I

The defendant first claims that the court improperly restricted his evidence as to the defenses of laches and equitable estoppel. We do not agree.

"It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires

support pending concerning the only remaining minor child, Matthew, who no longer was living with the plaintiff, but was living with the defendant at least on a part-time basis, and that this motion would be heard at a later date. It is not clear from the record why the defendant did not seek to include this as part of his motion for modification and have the court act on it at the July 13, 2005 hearing. We also note that the defendant previously had assumed physical custody of another of the children, Michael, from 1995 through 1998, when Michael began to live on his own. The record reveals that the plaintiff did not pay child support to the defendant for Michael, and the defendant did not seek child support or a modification of the unallocated support orders during this period of custody. Nevertheless, the defendant has not raised any claim concerning any of these issues on appeal. We mention them for background purposes only.

a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *Housing Authority* v. *DeLeon*, 79 Conn. App. 300, 306, 830 A.2d 298 (2003).

The defendant points to the court's apparent uncertainty over whether equitable estoppel and laches had to have been pleaded specially, as the plaintiff had argued, in order to be considered by the court. Although we acknowledge that the court was unsure as to the proper procedure to be employed when a party raises these defenses to a motion for contempt, the record clearly reveals that the court allowed the defendant to introduce his evidence, and the court stated that it would consider the propriety of the defenses before issuing a ruling. In addition, in its memorandum of decision, the court addressed the applicability of the defenses and the manner in which such defenses may be raised, concluding that the defendant raised them in the proper manner but that he failed to prove them. We conclude that the court did not restrict the defendant's evidence improperly.

## II

The defendant next claims that the court improperly concluded that the evidence did not support the defenses of equitable estoppel and laches. We are not persuaded.

At the outset, we note that the court's factual determinations will not be overturned on appeal unless they are clearly erroneous. See *Emerick* v. *Emerick*, 28 Conn. App. 794, 803, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992). "As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations

is limited to whether those findings are clearly erroneous. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Adams* v. *Adams*, 93 Conn. App. 423, 427, 890 A.2d 575 (2006). "In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Purnell* v. *Purnell*, 95 Conn. App. 677, 683, 897 A.2d 717, cert. denied, 280 Conn. 903, 907 A.2d 91 (2006).

A

We now address the defense of equitable estoppel. "[A] claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 72 Conn. App. 408, 414–15, 805 A.2d 745 (2002).

Following our granting of the defendant's motion for review, which he filed after the trial court denied his motion for articulation, we ordered the court to "articulate the basis for its conclusion that the [defendant]

failed to prove equitable estoppel," to which the court responded: "The court found and reiterates that the plaintiff did nothing . . . which was intended or calculated to induce the defendant to believe that she would forgive or reduce the amount of payment due and owing. In addition, there is no evidence that the defendant changed his position in reliance on any alleged agreement with the plaintiff."

A review of the record reveals that the defendant testified that he told the plaintiff that he was having financial difficulty in 1999, that he could not continue to make payments in the amount of $7200 per month and that he was not sure he ever would have the ability to resume such payments. The defendant further testified that he told the plaintiff that he was going to seek a modification of the support orders and that, in response, the plaintiff told him that "it seem[ed] . . . a little bit silly to be spending money on lawyers when there [wasn't] enough money to be going around. . . and if [he would] agree to continue to make payments to [her], [she would not] take [him] to court for that and just do the best [that he could]."

The plaintiff testified that the defendant told her that "he would not be able to continue making the regular payments. However, . . . he would pay [her] back whatever he was short in what he owed [her]." Additionally, the plaintiff testified that the defendant "asked [her] if he needed to get an attorney, and . . . [she] said, 'you're going to pay me back, right?' And he [said] 'yes.' And [her] recollection of that conversation [was] vague; however, it was always [her] thought that he was going to pay [her] back."

On the basis of this testimony and the remaining record, the court concluded that the defendant failed to prove that the plaintiff had ever agreed to accept

reduced payments in full satisfaction of her claims or that she intentionally had induced the defendant into believing that she would accept reduced payments in full satisfaction of her claims. Although the defendant honestly may have believed that the plaintiff was willing to accept these lesser amounts in full satisfaction of her claims, the court found that the plaintiff had not made such an agreement, and nothing in the record supports the conclusion that this finding was clearly erroneous. The testimony, at times, may have been somewhat contradictory, but it is the function of the trial court to weigh the evidence and the credibility of the parties and to find the facts; we cannot retry the case on appeal. See *Adams* v. *Adams*, supra, 93 Conn. App. 427.

The record contains evidence that supports the court's conclusion that the plaintiff agreed to bear with the defendant while he attempted to get back on his feet but that she did not agree to relinquish her right to the accruing arrearages. Accordingly, we conclude that the court's factual determination was not clearly erroneous.[4]

B

We next turn to the defendant's defense of laches. "Laches consists of an inexcusable delay which prejudices the defendant. . . . First, there must have been a delay that was inexcusable, and, second, that delay

---

[4] Because we have concluded that the court's finding that the plaintiff did not agree to accept reduced payments in full satisfaction of her claims was not clearly erroneous, we need not determine whether the defendant changed his position in satisfaction of the second element. Even if we were to agree with the defendant's contention that he changed his position by not filing a motion for modification in 1999, because he believed the plaintiff had agreed to accept whatever payments he could make in full satisfaction of her claims, the court's finding that he failed to prove that the plaintiff actually made such an agreement is dispositive of the claim.

must have prejudiced the defendant." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky,* supra, 72 Conn. App. 413. "A determination that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a determination inevitable as a matter of law." *Kalinowski* v. *Kalinowski,* 92 Conn. App. 344, 352, 885 A.2d 194 (2005). "The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant . . . as where, for example, the defendant is led to change his position with respect to the matter in question." (Citations omitted; internal quotation marks omitted.) *Emerick* v. *Emerick,* supra, 28 Conn. App. 804.

In this case, the plaintiff testified that she understood that the defendant was going through a very difficult financial time, and she agreed to bear with him until his financial circumstances improved. She always believed, however, that the defendant "was going to pay [her] back." Such testimony explains her delay in filing a motion to show cause. In its memorandum of decision, the court specifically found that "[t]he time period between the defendant's failure to make payments as required by the court's judgment in 1999 and the plaintiff's initial contempt citation [in 2003] did not constitute 'inexcusable delay.' " On the basis of the record, we are unable to conclude that the court's finding was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.