## LINDA MAE BEHRNS v. RONALD WAYNE BEHRNS
### (AC 30734)

Robinson, Flynn and Sullivan, Js.

Argued June 3—officially released November 9, 2010

*George J. Markley,* with whom, on the brief, was *Veronica E. Reich,* for the appellant (defendant).

*James H. Lee,* with whom, on the brief, was *Kirk A. Bennett,* for the appellee (plaintiff).

*Opinion*

FLYNN, J. Before us is the third appeal arising out of a separation agreement of the parties, the plaintiff,

Linda Mae Behrns, and the defendant, Ronald Wayne Behrns, which, at their request, had been incorporated into their decree of dissolution. This most recent appeal arises from the judgment of the trial court, finding that the defendant was in wilful contempt of the original court order requiring him to pay alimony and child support to the plaintiff every other week. On appeal, the defendant claims that the court improperly (1) failed to follow the mandate set forth in *Behrns* v. *Behrns*, 80 Conn. App. 286, 835 A.2d 68 (2003), cert. denied, 267 Conn. 914, 840 A.2d 1173 (2004) (*Behrns I*), that a new hearing on the plaintiff's motion for contempt, including a reconsideration of the meaning and import of the agreement, was required; (2) found him in wilful contempt despite the remand order of *Behrns* v. *Behrns*, 102 Conn. App. 96, 924 A.2d 883 (2007) (*Behrns II*), which, he alleges, limited the court's authority to rendering a decision on alimony, child support and attorney's fees; (3) found that the defendant's failure to pay was wilful; (4) interpreted the parties' agreement and ordered him to pay $84,635 in arrearages, failing to take into account his loss of salary and wages, and instead relying on his supposed earning capacity; (5) awarded attorney's fees to the plaintiff; (6) awarded interest on the arrearages; and (7) ordered the defendant not to transfer, assign or pledge any assets without leave of the court. We affirm the judgment of the trial court.

The following facts, as gleaned from the record, and procedural history are relevant to our resolution of the defendant's claims. The parties, who were married in 1964, contemplated divorce in 1984, and, at that time, the plaintiff retained an attorney who drafted a separation agreement. The parties reconciled for a time, but in 1986, they decided to end their marriage. By that time, both parties were represented by separate counsel. The defendant suggested a change in the separation agreement, to which the plaintiff agreed. That change

was incorporated into the separation agreement as § 5.3. Section 5.3 of the agreement provides that "[a]ll the payments . . . [of alimony and child support] shall increase or decrease, by an amount equal to the cost of living as measured by the [c]onsumer [p]rice [i]ndex, or the percentage yearly increase or decrease in the [defendant's] salary and wages, whichever is less . . . ." In 1986, the trial court, *Harrigan, J.,* rendered judgment dissolving the parties' marriage. The judgment of dissolution incorporated the written separation agreement between the parties. Pursuant to the dissolution agreement and the subsequent judgment, the defendant was obligated to pay to the plaintiff $815 every other week as alimony and $325 every other week as child support.

In 1990, the defendant lost his job with his employer, GTE Corporation, along with his salary and wages. He subsequently stopped paying alimony and child support. For some years thereafter, the plaintiff demanded payment from the defendant. In April, 2001, the plaintiff filed a postjudgment motion for contempt, alleging that the defendant had failed to make any alimony payments since July, 1990.[1] The defendant responded by claiming that in accordance with the separation agreement, his loss of income mandated a reduction in alimony and child support. After hearing evidence concerning the plaintiff's motion for contempt, the trial court, *Dewey, J.,* denied the plaintiff's motion for contempt, finding

---

[1] There were three children born during the marriage: a daughter, who was born in May, 1967; a son, who was born in September, 1969; and another son, who was born in December, 1978. At the time of the dissolution judgment, the daughter already had reached the age of majority. Subsequently, the older son reached majority age in 1987 and the younger son in 1996. At the time the plaintiff filed her motion for contempt, the defendant was no longer obligated to pay either child support or alimony, all of the children having reached the age of majority, the youngest becoming eighteen in December, 1996, and the plaintiff having remarried in 1993. The motion, therefore, sought the payment of back support and alimony.

that § 5.3 was clear, unambiguous and self-executing and that, under the judgment of dissolution, the defendant did not owe any alimony or child support. *Behrns* v. *Behrns*, supra, 80 Conn. App. 288. The plaintiff appealed from that judgment in *Behrns I*, in which we reversed the judgment of the trial court, concluding that the court improperly had determined that § 5.3 of the agreement was self-executing. We also concluded that the court abused its discretion in denying the plaintiff's postjudgment motion for contempt on the basis of its erroneous factual findings, and we remanded the case for a new hearing on the plaintiff's motion for contempt. Id., 292.

On remand, the court, *Owens, J.*, found that this was "not the classic 'wilful' case" of contempt with which the court usually was presented, and it stated that it would "not enter a judgment of contempt [at that time]." The court also determined that the defendant's attorney was the scrivener of the agreement and that, pursuant to the disputed provision, the defendant was liable for an amount decreased by the lesser of the change in the price index or the percentage decrease in his salary and wages, and it awarded to the plaintiff "the sum of $96,560 for alimony and child support and $45,339.85 in counsel fees, for a total of $141,889.85." The defendant appealed from that judgment. See *Behrns* v. *Behrns*, supra, 102 Conn. App. 96. On appeal, the defendant claimed, inter alia, that the court had construed the parties' separation agreement improperly and erroneously had found that he had drafted the agreement and, as a result, had erred when it construed ambiguities in the agreement against him. Id., 98. We agreed and reversed the judgment of the court, determining that the court incorrectly had concluded that it was undisputed that the defendant's attorney had drafted the disputed provision; therefore, pursuant to *Sturman* v. *Socha*, 191 Conn. 1, 463 A.2d 527 (1983), we concluded

that the agreement should not have been construed against the defendant. Concluding that the court's construction against the defendant may have been prejudicial, we then reversed the judgment in part and remanded the case for further proceedings on the issues of alimony, child support and attorney's fees. *Behrns* v. *Behrns*, supra, 101. We affirmed the judgment in all other respects. Id.

On December 8, 2008, the trial court, *Pinkus, J.*, rendered judgment, which is the subject of the present appeal. The court found the defendant to have been in wilful contempt of the court's orders regarding child support and alimony, especially in light of his ability to pay support during the time that he had refused.[2] The court awarded the plaintiff $57,050 in unpaid alimony and $27,185 in unpaid child support, plus interest, in accordance with General Statutes § 37-3a, from January 1, 1998.[3] The court also awarded the plaintiff attorney's fees in the amount of $82,600.51. This appeal followed.

I

The defendant first claims that the court improperly failed to follow a mandate as set forth by this court in *Behrns I*. Specifically, he argues: "It is clear . . . that the [trial] court never accepted the fact that it was obligated to hold a hearing on the meaning and import of [§] 5.3 . . . despite the express mandate of the Appellate Court in *Behrns I* that the case be remanded

[2] The record reveals that the defendant filed for bankruptcy in Vermont in 1992. On the income schedule filed in that case, the defendant attested that his monthly income was $7711.12, even without the benefits of salary and wages. He also listed monthly alimony and child support payments of $1990 as then current expenditures, despite his discontinuation of payment. The declaration to the truth of these figures was signed and dated June 5, 1992.

[3] In its articulation, the court stated that the interest rate was 10 percent.

'with direction to conduct a *new hearing* on the plaintiff's motion for contempt' . . . [which] would include a determination of the meaning and import of the ambiguous language." (Emphasis in original.) We disagree.[4]

"Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the trial court must observe. . . . Compliance means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed. The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. . . . We have also cautioned, however, that our remand orders should not be construed so narrowly as to prohibit a trial court from considering matters relevant to the issues upon

---

[4] In this case, we are faced with an unusual situation. On the one hand, the defendant specifically argues that the court, *Pinkus, J.,* in the second remand of this case; see *Behrns II*; failed to follow the directive of the Appellate Court in *Behrns I*. He argues that Judge Pinkus was required "to conduct a *new hearing* on the plaintiff's motion for contempt, [which] would include a determination of the meaning and import of the ambiguous language," as was dictated in *Behrns I.* (Emphasis in original; internal quotation marks omitted.) On the other hand, the defendant argues in his next claim on appeal that Judge Pinkus exceeded his authority by going beyond the mandate set forth by the Appellate Court in *Behrns II*, which required the court to make a new determination as to child support, alimony and attorney's fees, and which, he argues, did not include a redetermination on the issue of contempt, as was required in *Behrns I.* Although these arguments seem to be inconsistent with each other, we will consider each independently of the other.

which further proceedings are ordered that may not have been envisioned at the time of the remand. . . . So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." (Citation omitted; internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso,* 240 Conn. 58, 65–66, 689 A.2d 1097 (1997).

The defendant argues that the court was required to follow a mandate set forth by the Appellate Court in *Behrns I.* We simply do not agree with such an assertion. In the case before us, which is the appeal from the decision of the court, *Pinkus, J.,* in the remand of this case in *Behrns II,* we conclude that the court was bound to follow the mandate set forth by this court specifically in *Behrns II.* Whatever direction or mandate we offered to the court in *Behrns I,* was relevant only to the case as remanded in *Behrns I.* Such directives could not be binding on the court in a subsequent remand unless we redirected the court in such a manner.

Furthermore, even if we were to construe the defendant's claim more broadly to be that the court was required to consider the ambiguity in § 5.3 in order to follow our mandate that it hold a new hearing on the issues of the orders of alimony, child support and attorney's fees, we still would not be persuaded by his claim. In *Behrns I,* we reversed the judgment of the trial court and held that § 5.3 of the parties' agreement was not self-executing. We specifically agreed with the plaintiff's contention that "the agreement was not self-executing and that the defendant was required to seek an order modifying the judgment instead of unilaterally reducing the alimony and child support payments to zero."[5]

[5] Although the defendant points to footnote 1 in *Behrns I,* in which the court indicated that it expected the trial court on remand to hold a hearing to consider in *Behrns I,* the meaning of the ambiguous language of the parties' agreement, we conclude that the statement was dicta. It is not clear whether the court considered that the defendant's alimony and child support obligation had ceased due to the plaintiff's remarriage and the children's reaching the age of majority. The trial court, *Pinkus, J.,* also speculated

*Behrns* v. *Behrns,* supra, 80 Conn. App. 289. Having failed to file a motion to modify, the defendant was obligated to comply with the existing orders of the court. See *Eldridge* v. *Eldridge,* 244 Conn. 523, 530, 710 A.2d 757 (1998) ("court orders must be complied with until they are modified by a court or successfully challenged" [internal quotation marks omitted]). Whether the agreement was ambiguous and subject to varying interpretations was irrelevant in this case in which the defendant had resorted to self-help rather than file a motion for modification. Simply put, where the defendant had not moved to modify, absent some type of setoff, he owed the money to the plaintiff.

## II

The defendant next claims that the court went beyond the mandate of our remand order as set forth in *Behrns II,* and, on that basis, it exceeded its authority in finding him in wilful contempt. The defendant's argument can be explained as follows: Judge Owens, the trial judge in *Behrns II,* had declined to render a judgment of contempt and only issued orders regarding support and attorney's fees, which orders were the basis of the defendant's appeal in *Behrns II;* Judge Owens' declination to find the defendant in contempt, however, was not appealed; upon issuing the order of remand in *Behrns II,* requiring that the trial court reconsider the orders of child support, alimony and attorney's fees, the Appellate Court affirmed Judge Owens' decision in all other respects; therefore, there can be no doubt that his decision declining to find the defendant in contempt was final, and Judge Pinkus went beyond his authority in revisiting the allegation of contempt. We reject the defendant's claim because even if Judge Pinkus went

that the court had not considered these facts. Nevertheless, the decision in *Behrns I,* clearly explained that the defendant was not free to engage in self-help and that he was bound by the previous orders of the trial court. See *Behrns* v. *Behrns,* supra, 80 Conn. App. 292.

beyond the mandate of our remand, the defendant invited the error by his actions and inactions.

In carrying out a mandate of an appellate tribunal, a trial court is limited to the specific direction of the mandate, as interpreted, in light of the appellate opinion. *Rizzo Pool Co.* v. *Del Grosso*, supra, 240 Conn. 65. Nevertheless, "[t]his court routinely has held that it will not afford review of claims of error when they have been induced. [T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional and induced constitutional error. . . . The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party." (Internal quotation marks omitted.) *Gorelick* v. *Montanaro*, 119 Conn. App. 785, 796–97, 990 A.2d 371 (2010).

At the commencement of the hearing, Judge Pinkus asked counsel on what matter they were proceeding. The plaintiff's counsel responded that it was the plaintiff's postjudgment motion for contempt. The defendant's counsel voiced no disagreement, nor did he correct or clarify that statement. The court explained that it had before it in both *Behrns I* and *Behrns II*, and it inquired of counsel as to what they thought the court needed to do. There was much discussion about § 5.3 of the agreement, whether it mattered what the agreement meant in light of our conclusion in *Behrns I* that it was not self-executing and the fact that the defendant had never moved to modify the orders of the court. The defendant's counsel argued that the court was required to consider the meaning of the language of the agreement in accordance with our direction in footnote

1 in *Behrns I*. The court expressed confusion over such direction and our remand. The court explained, and counsel agreed, that if the agreement were not self-executing as held by the Appellate Court, the defendant simply would owe the money because he had never moved to modify the court's orders and the meaning of § 5.3 would not be relevant. The court stated that despite its uncertainty as to the mandate, it would keep an open mind, review the prior appellate decisions and proceed with the hearing. Counsel then called witnesses.

We next sum up the relevant evidence offered at the hearing. The plaintiff testified, in relevant part, that she confronted the defendant in 1991 about his lack of payment and that he stated that he did not have the money because he was starting a new business but that he would pay the plaintiff as soon as he could. She also testified that the defendant made no payment of either alimony or child support in 1992, but, in 1993, he gave the plaintiff a check for $1000, noting on the check that it was for "support." She also received a $600 child support payment from the defendant at the end of 1994. The plaintiff also testified about the defendant's 1992 Vermont bankruptcy filing. The plaintiff's counsel then pointed out that the income schedule showed that the defendant had a monthly income of $7411.12, and he asked the plaintiff to review the page of the bankruptcy schedule for expenditures, which showed a monthly expenditure of $1990 for alimony and child support. The plaintiff stated that she was not receiving that money from the defendant. The plaintiff also testified regarding another bankruptcy involving the defendant in 1997, from which she received a payment of $7440.

While the defendant's counsel was questioning the plaintiff regarding what attorney's fees she had paid pursuing her payments from the defendant, as well as whether she had the funds to make such payments, the

plaintiff's counsel objected on the ground of relevance. The defendant's counsel argued: "Well, Your Honor, the court has to make—presumably will make a judgment, and I understand the claim will be that she is not able to pay for these fees, so, at least that's part of the claim, I'm assuming, regarding attorney's fees, so I think it's fair to question her on what funds she actually may have." The plaintiff's counsel then responded: "Well, Judge, if Your Honor finds wilful contempt, there's no need for that." The defendant's counsel made no statement to the court that it *could not* find the defendant in contempt. The court permitted the line of questioning.

After the hearing, the parties agreed to the submission of simultaneous posttrial briefs and to subsequent oral argument. In his posttrial brief, the defendant never made any representation that the court should not or could not consider the issue of contempt; rather, he specifically argued: "Even today, [the defendant] asserts that he has not violated any court order whatsoever much less in any wilful or deliberate fashion. All the evidence further indicates that this court should not hold him in wilful or deliberate contempt . . . ." He concluded: "For all the reason[s] set forth herein, the motion for contempt should be denied. In the alternative, if the defendant is ordered to pay any amount to the plaintiff, it should be a reasonable, fair and equitable amount in accordance with [the] defendant's ability to pay." The defendant made no statement to the court that it could not hold the defendant in contempt; rather, he argued that the court should deny the motion for contempt and that the evidence indicated that the court should not hold him in contempt.

Finally, during closing arguments, the plaintiff's counsel argued that the defendant had engaged in "an extraordinary amount of contemptuous behavior before the court." Counsel referred to the defendant's actions related to the nonpayment of alimony and child support

and to actions during the entirety of the plaintiff's prosecuting the motion for contempt. The plaintiff's counsel argued that under General Statutes § 46b-87, the court could award counsel fees for the defendant's wilful contempt. The defendant's counsel argued: "On the question of attorney's fees, two statutes [may apply]. [Under §] 46b-87, if he's found in contempt, the court can order the payment of attorney's fees. That's essentially as a punitive measure. Two courts have found that he is not in wilful, deliberate contempt, and, in fact, you know, despite the litany of horrible and egregious acts that [the plaintiff's counsel] would go through, I think that he was also consistent throughout. It was not wilful and deliberate. He believed and he had a basis upon which to believe that—that he did not owe the money, and I don't think that his actions are contemptuous." The court then asked the defendant's counsel if it could award attorney's fees even if it did not hold the defendant in contempt, to which counsel opined that the court could take such action after considering the financial abilities of the parties and after balancing various factors. Again, the defendant never indicated to the court that he thought that the court was without the authority to consider the issue of contempt. Rather, the defendant repeatedly argued that his behavior was not contemptuous and that the court should find that he was not in contempt.

On the basis of the record before us, we conclude that if the court committed error by exceeding its authority on remand, such error was resultant from the defendant's own actions and was induced or invited. We therefore decline to review the claimed error further.

### III

The defendant next claims that "even if the court had the authority to find the defendant in contempt despite the preexisting law of the case, it erred in finding him

in contempt." Specifically, the defendant argues that before the court could find him in contempt, it had to determine that § 5.3 of the agreement was clear and unambiguous. He further argues that the Appellate Court already has determined that the language of the agreement was "palpably ambiguous . . . ." *Behrns* v. *Behrns*, supra, 80 Conn. App. 287 n.1. We are not persuaded.

Recently, our Supreme Court clarified the standard of review applicable to civil judgments of contempt in *In re Leah S.*, 284 Conn. 685, 935 A.2d 1021 (2007). The court explained: "[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) Id., 693–94.

"The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion." (Citation omitted; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, supra, 244 Conn. 529.

The defendant argues that § 5.3 of the parties' agreement was ambiguous and that he, in good faith, interpreted it to mean that if he lost all wages and salary, he did not have to pay child support or alimony. He further argues that this interpretation necessarily was reasonable given the fact that the first decision of the trial court, *Dewey, J.,* on the motion for contempt agreed with his interpretation. The plaintiff argues that the provisions of the agreement requiring the defendant to pay child support and alimony were clear and that the defendant's alleged interpretation of § 5.3 was not reasonable or in good faith. She also argues that even if the agreement was ambiguous, the defendant still was not entitled to engage in self-help. We agree with the plaintiff.

"In Connecticut, the general rule is that a court order must be followed until it has been modified or successfully challenged. [Id., 530]; *Behrns* v. *Behrns,* [supra, 80 Conn. App. 289]. Our Supreme Court repeatedly has advised parties against engaging in 'self-help' and has stressed that an 'order of the court must be obeyed until it has been modified or successfully challenged.' . . . *Sablosky* v. *Sablosky,* [258 Conn. 713, 719, 784 A.2d 890 (2001)]; see also *Eldridge* v. *Eldridge,* supra, [244 Conn.] 528–32 (good faith belief that party was justified in suspending alimony payment did not preclude finding of contempt); *Mulholland* v. *Mulholland,* 229 Conn. 643, 648–49, 643 A.2d 246 (1994); *Nunez* v. *Nunez,* 85 Conn. App. 735, 739–40, 858 A.2d 873 (2004)." *Lawrence* v. *Lawrence,* 92 Conn. App. 212, 215–16, 883 A.2d 1260 (2005); see *Riscica* v. *Riscica,* 101 Conn. App. 199, 200–201, 921 A.2d 633 (2007).

In this case, the agreement of the parties was not self-executing. Even if it could be said that § 5.3 was ambiguous, the court, *Pinkus, J.,* specifically found: "[T]he defendant's interpretation of § 5.3 of the separation agreement [was] flawed, and his testimony

regarding the interpretation of the provision [was not] credible. . . . The defendant assert[ed] that if his income was decreased by 0.5 [percent] and the consumer price index decreased by 4.6 [percent], he would apply the 4.6 [percent] since that would be the lesser payment even though the lesser change would be to apply the 0.5 [percent]. In fact, the defendant claimed that, if his income went up and the consumer price index went down, his payment would decrease because he was always required to pay the lesser amount. When the defendant was separated from GTE [corporation] in 1990, he adopted this interpretation in order to stop his alimony and child support payment, claiming that no income resulted in no obligation to pay."

The court also explained: "[T]he defendant claims that he was separated from his employer, GTE [Corporation], in 1990 and that he earned no income for a considerable period of time. The court does not find this testimony to be credible. From 1990 to 1997,[6] the defendant operated a bakery in Woodstock, Vermont, and did some consulting work. The defendant filed for bankruptcy twice. In his 1992 sworn bankruptcy filing . . . the defendant's schedule I indicated monthly income of $7711.12.[7] This includes regular monthly income of $4362, monthly income from real property of $1712.12 and monthly income from consulting in accounting of $1000. Schedule I also asked the defendant to describe any increase or decrease of more than 10 [percent] in any of the categories anticipated to occur within one year from the filing. The response was, 'none.' The defendant's 1997 bankruptcy filing . . . indicates projected monthly income of $7558, which is

---

[6] The trial court, found that "[i]n 1997, the defendant was reemployed with GTE [Corporation], coincidental with the expiration of his child support obligation."

[7] "The court noted that "the bankruptcy filing also acknowledged his alimony and child support obligation, despite his claim that it terminated automatically in 1990."

consistent with his 1992 bankruptcy filing. The defendant also testified that he was employed by K & M Engineering subsequent to 1990 and earned approximately $41,000. In fact, the defendant testified that he thinks he owes [the plaintiff] $30,000, although it is not at all clear to the court how this amount was calculated. Despite having significant income, in accordance with sworn bankruptcy filings, the defendant only paid the plaintiff $1600 in 1993 and $7440 in connection with the 1997 bankruptcy filing. . . . The court finds that the defendant failed to make payments pursuant to the court order despite having the ability to do so." The court, thereafter, found the defendant to be in wilful contempt.

Although the defendant argues that § 5.3 of the agreement was ambiguous and that his interpretation was reasonable, "if a finding of wilful [contempt] is based on a court's determination of the credibility of relevant testimony at trial, we will overturn it only if the record demonstrates a manifest abuse of discretion. [T]he trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *LaBossiere* v. *Jones*, 117 Conn. App. 211, 224, 979 A.2d 522 (2009).

The court found the defendant's testimony regarding his alleged interpretation of the agreement to be not credible. The court further found that the defendant adopted this interpretation after he was separated from GTE Corporation in 1990, specifically to avoid paying alimony and child support, despite the fact that he had the ability to continue making payments. This finding is not contested. Furthermore, as a reviewing court, we are unable to pass on the court's assessment of the defendant's lack of credibility, and, therefore, are unable to conclude that the court abused its discretion in finding the defendant in wilful contempt.

## IV

Next, the defendant claims that the court improperly interpreted the parties' agreement and ordered him to pay $84,635 in arrearages, failing to take into account his loss of salary and wages, and, instead, relying on his supposed earning capacity. The plaintiff counters that because the defendant never moved for a modification of the court's order regarding child support and alimony, the original orders of the court remained in place, and the defendant owed the back support irrespective of his loss of salary and wages. We agree with the plaintiff.

In Connecticut, an order of the court must be followed until it has been modified or otherwise successfully challenged. See *Eldridge* v. *Eldridge*, supra, 244 Conn. 530. Parties are not permitted to engage in self-help but are bound to follow the orders of the court. See id.; *Lawrence* v. *Lawrence*, supra, 92 Conn. App. 215–16; see also *Riscica* v. *Riscica*, supra, 101 Conn. App. 200–201. "[A] party should avoid self-help and seek judicial assistance when a modification of a court order is necessary." *Riscica* v. *Riscica*, supra, 201.

As we started in part I of this opinion, the defendant failed to move for a modification of the court's orders of support and alimony. As such, the orders remained in place. The construction of the agreement, his salary, his wages and his earning capacity are irrelevant to this situation. Simply put, the defendant owed the money absent some type of setoff, for which the defendant makes no claim on appeal.

## V

The defendant also claims that the court improperly awarded attorney's fees to the plaintiff pursuant to § 46b-87. He argues that "because the finding of contempt cannot be sustained . . . the award of counsel

fees, which was dependent on the contempt finding, must similarly be set aside." Additionally, the defendant argues that even if the finding of contempt were sustainable, the court improperly awarded attorney's fees for the prior hearings and appeals related to the plaintiff's motion for contempt. The plaintiff argues that the court did not abuse its discretion in awarding attorney's fees for the prosecution of the entirety of this single contempt motion both on the basis of § 46b-87 and the attorney's fee provision of their agreement. We agree with the plaintiff. Although there have been three appeals, there was but one motion and one agreement between the parties.

Section 46b-87 provides in relevant part: "When any person is found in contempt of an order . . . the court may award to the petitioner a reasonable attorney's fee . . . ." Section 9.3 of the parties' agreement provides in relevant part: "In the event that it shall be determined . . . that either party shall have breached any of the provisions of this [a]greement or of any court decree incorporating by reference . . . this [a]greement . . . the offending party shall pay to the other party reasonable attorney's fees, court costs and other expenses incurred in the enforcement of the provisions of this [a]greement and/or judgment or decree incorporating any or all of the provisions hereof."

Under either our General Statutes or the parties' agreement, the court properly could award the nonoffending party "reasonable" attorney's fees. In this case, the court specifically found that although the "defendant's counsel dispute[d] her client's obligation to pay any attorney fees, she agreed that the fees charged the plaintiff were reasonable." This finding is not challenged on appeal. Additionally, our independent review of the trial transcripts in this case clearly supports the court's finding. During the hearing, the defendant's counsel specifically stated that she did not contest the

reasonableness of the fee charged by the plaintiff's counsel. Although the defendant argues that it is unfair to hold him liable for all of the attorney's fees incurred by the plaintiff, especially when he successfully prosecuted the appeal in *Behrns II*, we conclude that it would not be an abuse of discretion for the court to conclude that it would be equally unfair to hold the plaintiff responsible for such fees when it was the defendant's unilateral decision to stop paying child support and alimony without seeking a modification of the court's orders that made it necessary for the plaintiff to file the motion for contempt in the first place. Unlike the cases cited by the defendant; see, e.g., *Dobozy* v. *Dobozy*, 241 Conn. 490, 501 n.8, 697 A.2d 1117 (1997) (finding improper trial court's award of attorney's fees for litigating first two contempt motions when present case concerned third motion for contempt); the case at bar involves only one motion for contempt, filed by the plaintiff on April 10, 2001. Accordingly, we conclude that the court did not abuse its discretion in awarding reasonable attorney's fees to the plaintiff for the prosecution of this single motion.

## VI

Next, the defendant claims that the court improperly awarded interest on the arrearages. He argues that (1) the "law of the case" prohibited the court from making such an award and (2) "there was no evidence that [the] defendant's failure to pay was wrongful." We will consider each of these arguments in turn.

## A

The defendant claims that the court exceeded its authority and failed to follow the law of the case by ordering him to pay interest on the arrearages pursuant to § 37-3a.[8] He argues that "the decision of Judge Owens

---

[8] General Statutes § 37-3a provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . ."

became the law of this case except as to the matters on which it was expressly reversed. On remand, the [trial] court was not free to enter orders for new relief that had never previously been ordered. The remand order referenced alimony, support and attorney's fees; it did not reference interest or any other matters as being a proper subject for the court's consideration on remand. By awarding interest, the court exceeded its authority and abused its discretion." We are not persuaded.

In Connecticut, we follow the "well-recognized principle of law that the opinion of an appellate court, *so far as it is applicable,* establishes the law of the case upon a retrial, and is equally obligatory upon the parties to the action and upon the trial court. *Dacey* v. *Connecticut Bar Assn.,* 184 Conn. 21, 23, 441 A.2d 49 (1981); see also *Gray* v. *Mossman,* 91 Conn. 430, 434, 99 A. 1062 (1917). The rule is that a determination once made will be treated as correct throughout all subsequent stages of the proceeding except when the question comes before a higher court; F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.5, p. 593; and applies both to remands for new trial; *Dacey* v. *Connecticut Bar Assn.,* supra; *Laurel, Inc.* v. *Commissioner of Transportation,* 173 Conn. 220, 222, 377 A.2d 296 (1977); *New Haven Trust Co.* v. *Camp,* 83 Conn. 360, 368–69, 76 A. 1100 (1910); and to remands for articulation. *Powers* v. *Powers,* 186 Conn. 8, 9 n.1, 438 A.2d 846 (1982)." (Emphasis added; internal quotation marks omitted.) *State* v. *Daniels,* 209 Conn. 225, 237, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989). Furthermore, "[w]ell established principles govern further proceedings after a remand by this court. . . . The trial court cannot adjudicate rights and duties not within the scope of the remand. . . . Our remand orders, however, are not to be construed so narrowly as to prohibit a trial court

from considering matters relevant to the issues upon which further proceedings are ordered . . . . So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." (Citation omitted; internal quotation marks omitted.) *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, 73 Conn. App. 492, 515–16, 808 A.2d 726, cert. denied, 262 Conn. 925, 814 A.2d 379 (2002) (*TDS Painting II*).

In *TDS Painting II*, the case had come before us on appeal for a second time. In the first appeal, we had remanded the case to the trial court with direction to "render judgment consistent with the report of the attorney trial referee." *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, 45 Conn. App. 743, 755, 699 A.2d 173, cert. denied, 243 Conn. 908, 701 A.2d 338 (1997) (*TDS Painting I*). Neither the attorney trial referee, the Superior Court nor this court had discussed the issue of attorney's fees or costs at the time of the appeal in *TDS Painting I*. After we remanded the case, the court refused to order the attorney trial referee to consider postjudgment attorney's fees and costs, as requested by the plaintiff, because it had not been directed to do so in our remand order. See *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, supra, 73 Conn. App. 517–18. In the parties' second appeal, the plaintiff claimed, inter alia, that the court should have ordered the attorney trial referee to consider these issues. Id., 514. We agreed, concluding that the court and the referee were not precluded from considering the issue of postjudgment attorney's fees and costs by virtue of our limited remand because those damages were not part of the earlier appeal. Id., 514–18.

In the present case, the plaintiff, in her prayer for relief, specifically requested "[s]uch other and further relief as [the] [c]ourt may appertain." Pursuant to § 37-3a, a party seeking the payment of an arrearage may

be entitled to interest. At the time of our remand both in *Behrns I* and *Behrns II*, neither the trial court nor this court had addressed the plaintiff's entitlement to interest on the money owed by the defendant. This is not a case in which the court previously rendered judgment denying an award of interest and then, on remand, revisited that issue when it was not directed to do so. Because the issue of interest previously had not been considered and ruled on, we conclude that the law of the case doctrine is inapplicable. Cf. *State* v. *Ross*, 269 Conn. 213, 263, 849 A.2d 648 (2004) (claim on appeal that trial court improperly denied motion to sever "governed by the law of the case" because Supreme Court previously had considered claim in prior appeal).

B

The defendant also claims that the court improperly awarded interest on the arrearages despite there being "no evidence that [the] defendant's failure to pay was wrongful." He argues that "his nonpayment of the disputed sums has never been wrongful and that there was no reasonable basis for the court's determination that the nonpayment became wrongful in 1998. Its findings [therefore] were clearly erroneous." We do not agree.

"Under . . . § 37-3a, interest may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. For example, interest is awarded at the maturity of a debt from the time the money becomes due." (Internal quotation marks omitted.) *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 41, 664 A.2d 719 (1995); see also 47 C.J.S. 53, Interest and Usury § 40 (2005) ("detention of money . . . arises where a debt has become due and the debtor withholds payment without having the right to do so" [internal quotation marks

omitted]). "The trial court has the discretion to decide whether to make an award of interest under . . . § 37-3a . . . . The question of whether . . . interest is a proper element of recovery ordinarily rests upon whether the detention of money is or is not wrongful. . . . When a former spouse is not justified in failing to pay sums due . . . the award of interest is proper." (Citations omitted; internal quotation marks omitted.) *Picton* v. *Picton*, 111 Conn. App. 143, 155–56, 958 A.2d 763 (2008), cert. denied, 290 Conn. 905, 962 A.2d 794 (2009). "A trial court must make two determinations when awarding compensatory interest under § 37-3a: (1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated. . . . Factual findings, such as those determinations, are reviewed under the clearly erroneous standard of review." (Citation omitted; internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 31, 830 A.2d 240 (2003); see also *Picton* v. *Picton*, supra, 155.

The defendant argues that because he thought he had a right to withhold his payment after losing his job with GTE Corporation, his withholding of those payments could not be wrongful. In this case, the court specifically found that "the defendant's interpretation of § 5.3 of the separation agreement [was] flawed and [that] his testimony regarding the interpretation of the provision [was] not credible." The court also found that when the "defendant was separated from GTE [Corporation] in 1990, he adopted [his] interpretation *in order to stop his alimony and child support payments*, claiming that no income resulted in no obligation to pay." (Emphasis added.) Additionally, the court found that from 1990 to 1997, the defendant operated a bakery in Woodstock,

Vermont, and that he did consulting work during that time as well. The court pointed out that in the defendant's 1992 sworn bankruptcy filing, he showed monthly income of $7711.12 and acknowledged his alimony and child support obligations despite his assertion before the trial court that these obligations had terminated in 1990 by virtue of the parties' agreement. The court found that the defendant's 1997 bankruptcy filing indicated a projected monthly income of $7558. On the basis of these findings and others, the court concluded that the defendant's actions in withholding his child support and alimony payments were not only wrongful but that they were wilful. "A wilful act is one that is intentional, wrongful and without just cause or excuse." (Internal quotation marks omitted.) *Soucy* v. *Wysocki*, 139 Conn. 622, 628, 96 A.2d 225 (1953). We conclude that the court's finding that the defendant's failure to pay child support and alimony was wrongful was not clearly erroneous.

The defendant also claims that the court's order that he pay interest from January 1, 1998, was clearly erroneous. He argues that there was no evidence that he had the ability to pay the arrearages in 1998 and that "the date chosen by the trial court . . . was illogical as it preceded the plaintiff's motion for contempt by more than three years." The plaintiff argues that the court, in the exercise of its discretion, acted properly. We agree with the plaintiff.

"Interest on such damages ordinarily begins to run from the time it is due and payable to the plaintiff. . . . The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of an arbitrary rule." (Citation omitted; internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 321, 541 A.2d 858 (1988).

In this case, the court found that the defendant wrongfully stopped paying alimony and child support in 1990, without seeking a modification of the court's orders regarding these payments. Under our law, the court could have ordered interest to run beginning with the first missed payment in 1990, with the base principal of the debt continuing to grow with each and every subsequently missed payment and with interest compounding. In the exercise of its discretion, the court, instead, ordered interest to begin in 1998, rather than from the outset in 1990.[9] On the basis of the record before us, we are unable to conclude that the court abused its discretion in so doing.

## VII

The defendant's final claim is that the court improperly ordered him not to transfer, assign or pledge any assets without leave of the court. The defendant argues that this order was "unnecessary and overreaching [and that] it constituted an abuse of discretion." The plaintiff argues that the power of the court to enter such an order is based on its "authority . . . to effectuate its prior judgments" and that the court acted properly in entering such an order. We conclude that the court did not abuse its discretion in restricting the defendant's encumbrance of his assets without leave of the court.

During final argument before the court, the plaintiff's counsel requested that the court issue an "order that [the defendant] be required to liquidate his assets . . . to make [the plaintiff] whole." He argued: "I think it's in Your Honor's equitable powers to order the sale of [the Trumbull] property or to order him to use it somehow to get the equity out of it to pay [the plaintiff]. . . . Likewise, the . . . GTE [Corporation] rollover."

---

[9] The plaintiff concedes that this was proper and does not argue that the court should have started the accrual of interest from the first missed payment.

The defendant's counsel argued in relevant part that if the court found that the defendant owed the plaintiff an arrearage, that "he be assigned a portion of it to pay at once and then the remainder of it be paid over time. The obligation was accrued over time . . . . I think that any amount would be fair to have it paid back over time."

In entering its order related to the defendant's prohibition on the encumbrance of his assets, the court specifically found: "[S]ince the prosecution of this motion, the defendant has transferred his interest in his Vermont home to his current wife without any apparent consideration. The defendant also failed to include his IRA rollover on his current financial affidavit. This was valued at $100,000 in 2002. . . . The defendant has also refinanced the property in Trumbull, increasing his indebtedness from $160,000 to $237,000. The defendant is over 59.5 years old and can make a withdrawal from his IRA without penalty." The court then ordered in relevant part: "The defendant is ordered to appear in court on February 5, 2009, to monitor compliance with this order and for the court to enter such other orders as may be appropriate at the time. The defendant is ordered not to transfer, assign or otherwise encumber any assets without further order of this court."

The defendant claims that this order was an abuse of discretion because it was "unnecessary and overreaching." We do not agree. Clearly, the court had the power to vindicate its prior judgment. "Courts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Citations omitted; internal quotation marks omitted.) *Commissioner of Health Services* v. *Youth Challenge of Greater Hartford,*

*Inc.*, 219 Conn. 657, 670, 594 A.2d 958 (1991). "[E]ven in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 243, 796 A.2d 1164 (2002). The "trial court's continuing jurisdiction to effectuate its prior judgments . . . by summarily ordering compliance with a clear judgment . . . is grounded in its inherent powers . . . ." Id., 246. "[I]n light of [a] defendant's continuous refusal to comply, [the court acts] properly [in] order[ing] him to do what it deem[s] necessary to protect the integrity of the [prior] judgment . . . ." *Johnson* v. *Johnson*, 111 Conn. App. 413, 425, 959 A.2d 637 (2008). "The court has authority to order additional measures not contained in the original order if they are necessary to effectuate the original judgment. *Roberts* v. *Roberts*, 32 Conn. App. 465, 471–72, 629 A.2d 1160 (1993) (order to auction property effectuated original judgment although original judgment did not call for sale at auction)." *Johnson* v. *Johnson*, supra, 425.

In this case, the court expressed concern over the defendant's handling of his assets, especially after the plaintiff filed her motion for contempt. Although the defendant complains that the restriction on the encumbrance of his assets was overbroad and unnecessary, it is clear that the court believed that its order was necessary to secure the defendant's debt to the plaintiff. In reviewing the defendant's financial affidavit, we observe that the defendant listed only $138,000 as the total cash value of his assets.[10] This, in combination

---

[10] The defendant certified on his financial affidavit that his assets were as follows: the equity in his Trumbull home was listed at $88,000 (this was after he took out a second mortgage loan on the property), and his deferred compensation plan with the state of Vermont had a total value of $50,000. He then listed the total cash value of *all assets* as $138,000. The defendant also noted, however, "miscellaneous personal property of undetermined value" and stock, bonds and mutual funds—listing no value for any of these assets. He also failed to list his IRA.

with the court's finding that the defendant also had an IRA, valued at $100,000 in 2002, which he failed to list on his certified affidavit, amounted to a total known cash value of assets of $238,000, barely enough to secure the defendant's debt to the plaintiff. On the basis of these findings and the record before us, we conclude that the court did not abuse its discretion in ordering the defendant to refrain from encumbering his assets without first obtaining the approval of the court.

The judgment is affirmed.

In this opinion the other judges concurred.