KEYIN T. WORTH ET AL. *v.* COMMISSIONER OF TRANSPORTATION ET AL.
(AC 32261)

Lavine, Alvord and McDonald, Js.

---

Argued March 17, 2011—officially released May 15, 2012

*Keyin T. Worth,* pro se, the appellant (named plaintiff).

*Charles H. Walsh,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* former attorney general, for the appellee (defendants).

*Opinion*

LAVINE, J. The self-represented plaintiff, Keyin T. Worth, appeals from the judgment of the trial court, *Hon. Richard M. Rittenband,* judge trial referee, granting the motion to dismiss filed by the defendants, the department of transportation (department) and Joseph

F. Marie, former commissioner of transportation.[1] On appeal, the plaintiff claims that the court erred in concluding that she may not take advantage of the accidental failure of suit statute, General Statutes § 52-592 (a).[2] We affirm the judgment of the trial court.

---

[1] Beautiful Things Boutiques, Inc., of which Worth is the sole shareholder, also asserted claims against the defendants, but withdrew its causes of action on April 8, 2010. In this opinion, plaintiff refers to Worth.

[2] The plaintiff also claims that the court (1) abused its discretion by granting the defendants' motion to dismiss because she failed to comply with Practice Book § 10-31 (b), which requires that an objection to a motion to dismiss to be filed five days before the motion appears on the short calendar, (2) abused its discretion in denying her motion to open or set aside the judgment and (3) was biased against her. We decline to review those additional claims for the following reasons.

Although the court found that the plaintiff failed to comply with Practice Book § 10-31 (b), that was only one of two grounds on which it granted the defendants' motion to dismiss. We conclude that the court properly found that the first action was not tried on its merits due to mistake, inadvertence or excusable neglect. A judgment of nonsuit entered against the plaintiff due to her failure to comply with discovery requests, despite a court order. The plaintiff, therefore, could not avail herself of the accidental failure of suit statute. Because we affirm the judgment on that basis, we need not address the timeliness issue.

As to the claim regarding the denial of the plaintiff's motion to open the judgment of dismissal, it is not properly before us. On May 14, 2010, the day the plaintiff filed the present appeal, she also filed a motion to open the judgment of dismissal. The court denied the motion to open on June 4, 2010. Practice Book § 61-9 provides in relevant part: "Should the trial court, subsequent to the filing of the appeal, make a decision which the appellant desires to have reviewed, the appellant shall file an amended appeal form in the trial court . . . ." The plaintiff did not file an amended appeal to include a claim regarding the denial of her motion to open. We therefore will not review the claim. See *Jewett* v. *Jewett*, 265 Conn. 669, 673 n.4, 830 A.2d 193 (2003).

As to the claim that the court was biased against her, the plaintiff did not raise the claim in the trial court. Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Furthermore, Practice Book § 1-23 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

The following facts and procedural history are relevant to this appeal. The plaintiff is the owner of real property located at 315 New Hartford Road in Barkhamsted (property) where she operates a retail business. In August, 2003, the department repaved a portion of Route 44 that abuts the property. When the repaving project was completed, the plaintiff noticed that storm water emanating from the highway was flooding her driveway. The plaintiff notified the department of the flooding, and the department attempted to fix the problem with little success. The plaintiff sought permission from the claims commissioner, pursuant to General Statutes § 4-160, to bring an action against the defendants. On September 5, 2007, the claims commissioner again granted the plaintiff permission to initiate an action against the defendants, finding that the department had not undertaken meaningful efforts to ameliorate the flooding until January, 2006.

I

## FIRST ACTION[3]

In March, 2006, after receiving permission from the claims commissioner, the plaintiff commenced an action (first action), with the aid of counsel, against Steven E. Korta, who was at that time the commissioner of transportation, the state of Connecticut, the department and her neighbors[4] to recover damages caused

The plaintiff did not avail herself of § 1-23 and raises a claim of bias for the first time in her brief. We therefore decline to address it. See *Pagni* v. *Corneal,* 13 Conn. App. 468, 472–73, 537 A.2d 520, cert. denied, 207 Conn. 810, 541 A.2d 1239 (1988).

[3] See *Karp* v. *Urban Redevelopment Commission,* 162 Conn. 525, 527, 294 A.2d 633 (1972) ("[t]here is no question . . . concerning our power to take judicial notice of files of the Superior Court, whether the file is from the case at bar or otherwise"). The facts in the first action provide a procedural context for this appeal.

[4] In the first action, the plaintiff also alleged that her neighbors Roberta M. Choquette, Armand R. Choquette and Doe One to Ten diverted water onto the property.

by the flooding on her property and to enjoin further damage to the property. See *Worth* v. *Korta*, 132 Conn. App. 154, 31 A.3d 804 (2011), cert. denied, 304 Conn. 905, 38 A.3d 1201 (2012). The file reveals that the first action was subject to a scheduling order. The defendants sought discovery from the plaintiff by way of interrogatories and requests for production (written discovery) on May 9, 2008. The plaintiff repeatedly sought an extension of time in which to comply with the defendants' written discovery. On October 16, 2008, the defendants filed a motion for order of compliance due to the plaintiff's failure to comply with their written discovery. On November 3, 2008, the court, *Prescott, J.*, ordered the plaintiff, who was then representing herself, to comply with the written discovery by December 15, 2008.

The plaintiff failed to comply with Judge Prescott's order. On January 6, 2009, the defendants filed a motion for a judgment of dismissal in which they represented that the plaintiff had failed to comply with Judge Prescott's November 3, 2008 discovery order and also that "the plaintiff . . . failed to appear for a December 29, 2008[5] deposition in response to a subpoena duly served on December 13, 2008."[6] The defendants argued that the plaintiff has "frustrated the ends of justice by failing to provide meaningful discovery to the state and thwarting the state's ability to defend itself against the claims in the" operative complaint. With their motion to dismiss, the defendants submitted a copy of the scheduling

---

[5] The subpoena in the file orders the plaintiff to appear for a deposition on December 29, 2008. In her brief to this court, the plaintiff represented that the deposition was to be held on December 26, 2008. The dissent has embraced the plaintiff's representation that the deposition was noticed for December 26, 2008.

[6] Our review of the file discloses that the defendants had noticed the plaintiff's deposition at least once prior to December 29, 2008, specifically, on September 9, 2008.

order indicating that written discovery was to be completed by September 30, 2008, and that the depositions of fact witnesses were to be taken by December 30, 2008. On January 21, 2009, the court, *Elgo, J.*, ordered that a "nonsuit shall enter against the plaintiff."[7]

On May 6, 2009, the plaintiff filed a motion to open the judgment of nonsuit. On the standard judicial form entitled motion to open judgment, the plaintiff stated that the judgment should be opened for the following reasons: "1. mistakes, accident, and other causes existed at the time of the judgment. 2. Good cause and timeliness existed at the time of the judgment." The plaintiff attached a twelve page memorandum of law, affidavit and numerous exhibits to her motion to open. In her memorandum, the plaintiff represented that she had a good cause of action and was prevented by mistake and reasonable cause due to (1) her counsel's sudden withdrawal without reason,[8] (2) her never having received the modified scheduling order, (3) the misleading implications of settlement negotiations[9] and (4)

---

[7] The first action against the remaining defendants proceeded to trial. See footnote 4 of this opinion. Judgment was rendered in favor of the remaining defendants. See *Worth* v. *Korta*, supra, 132 Conn. App. 155.

[8] Our review of the file disclosed that the plaintiff's counsel, Vincent F. Sabatini, filed a motion to withdraw his appearance on July 30, 2008, in which he represented that there had been an irreconcilable breakdown of the attorney-client relationship. The plaintiff attached a copy of the transcript of the September 8, 2008 short calendar argument on the motion to withdraw before the court, *Dubay, J.* During the argument, the plaintiff stated: "At this point in time I would need to hear from him as to how the communication broke. It is a detriment to me." The court asked the plaintiff whether she would retain new counsel, and she stated: "No. That's the reason why I need to address the court that temporarily I probably need to go on pro se and I need to have all my files back. There are discrepancies." The court granted Sabatini's motion to withdraw as the plaintiff's counsel.

[9] The plaintiff attached to the motion to open the judgment an undated letter to the defendants' counsel, in which she stated in part: "I wish to have the deposition scheduled for Monday rescheduled because I would like to be represented by an attorney at my deposition and due to the inconvenient timing in the only busiest two weeks for retail business as I presented to you on my letter, dated December 5, 2008. If attorney [Thomas] Willcutts' efforts to settle the case fail, I expect to have a new attorney

the defendants' counsel being permitted to attend her deposition that was noticed by counsel for the defendant neighbors.[10]

The defendants objected to the motion to open and set aside the judgment of nonsuit. The defendants asserted "that good cause does not exist for reopening the judgment because the plaintiffs still have not complied with the court's November 3, 2008 discovery order,

representing me in the case shortly. Attorney Willcutts has indicated to me that he should be able to determine within a week's time if he can settle the case. I can be available for a deposition by mid-January if we cannot settle this case. I will not attempt to avoid my deposition due to a deviation in the scheduling order."

[10] The plaintiff attached to her motion to open the judgment a December 5, 2008 letter to her from the defendants' counsel. The letter states in part: "[T]he defendants still need to take your deposition. You are required to provide me with discovery materials on or before December 15, 2008. I will require time to review those materials. Therefore, your deposition will have to occur after that date. The defendants have consulted with each other and determined that the deposition needs to occur on either December 23, 2008 or December 29, 2008. Please let me know which of those two dates you would prefer . . . ."

The plaintiff responded to the defendants' counsel in a letter dated December 5, 2008, stating in part: "In your letter, multiple times you expressed 'the defendants.' I am not clear who these defendants you are referring to. Up until today, neither you nor Attorney Ronald D. Williams has attempted to schedule any depositions with me since the filing of my complaint. If you were referring to the defendants Choquettes, I was never notified that you have been now legally representing them. Could you please be so kind to identify to me under which Connecticut Practice Book Court rules or under what Connecticut General Statute that the Attorney General's office is allowed to legally represent codefendants and any civilian defendants of tortious acts."

On December 26, 2008, the plaintiff filed a motion to quash the December 11, 2008 subpoena ordering her to appear for a deposition on December 29, 2008. In her motion to quash, the plaintiff represented in part that she "was served deposition subpoena by the State defendants. . . . In the subpoena, the State defendants failed to identify who and how many deposing attorneys will be. . . . The State defendants appeared to attempt to allow the Choquettes defendants' legal counsel to participate in the same deposition without out the plaintiffs' consent. The Choquettes defendants are not state employees but civilians. . . ." The record reflects that the motion to quash was not adjudicated.

because the plaintiffs filed the motion four weeks prior to trial and because the reasons set forth in the motion are not supported by the facts of the case." The defendants set forth their version of the procedural history in a twenty-seven point list. The court, *Domnarski, J.*, denied the motion to open the judgment of nonsuit and sustained the defendants' objection thereto on May 26, 2009. The plaintiff did not appeal from Judge Domnarski's ruling.

## II

## PRESENT ACTION

On January 19, 2010, the plaintiff commenced the present action against the defendants pursuant to the accidental failure of suit statute, § 52-592. The plaintiff sought an injunction and damages resulting from the 2003 repaving by the department, which allegedly caused flooding on her property. On April 5, 2010, the defendants filed a motion to dismiss the present action arguing, inter alia, that the plaintiff could not rely on the accidental failure of suit statute.[11] The defendants attached documents to their motion to dismiss to establish that the judgment of nonsuit that entered in the first action was not the result of inadvertence, mistake or excusable neglect. On April 26, 2010, the same day that the motion to dismiss was to be heard at short calendar, the plaintiff appeared in court with an objection to the motion to dismiss.[12]

On April 27, 2010, Judge Rittenband granted the defendants' motion to dismiss on two grounds. The

---

[11] The defendants also argued that if the accidental failure of suit statute is available to the plaintiff, the plaintiff is barred from suing the state pursuant to the doctrine of sovereign immunity. The plaintiff did not obtain permission from the claims commissioner to sue the department or Marie in the present action. In light of our disposition of this case on the issue of the accidental failure of suit statute, we need not decide that issue.

[12] The plaintiff's objection to the motion to dismiss is not contained in the record or the file.

court first noted that Practice Book § 10-31[13] provides that the party opposing a motion to dismiss must file its objection within five days of the date that the motion to dismiss appears on the short calendar.[14] The court found that the plaintiff had failed to comply with § 10-31 and that the defendants would not waive their objection to the untimely presentation of an objection. As to the merits of the motion to dismiss, the court concluded that the plaintiff was attempting to "resurrect" her first action by suing Marie, who was then commissioner of transportation. The court found that the plaintiff did not plead any facts supporting claims of inadvertence, mistake or excusable neglect to support the application of the accidental failure of suit statute. The plaintiff appealed from the judgment of dismissal. Subsequently, she filed a motion to open the judgment and a motion to reconsider. The court denied both motions. Additional facts will be set forth as necessary.

### III

### APPEAL

The plaintiff claims that the court improperly concluded that she may not avail herself of the accidental failure of suit statute because she failed to plead facts to establish that the first action was not tried on its merits due to a mistake, inadvertence or excusable

---

[13] Practice Book § 10-31 (b) provides in relevant part: "Any adverse party who objects to [a motion to dismiss] shall, at least five days before the motion is to be considered on the short calendar, file and serve . . . a memorandum of law . . . ."

[14] The transcript of the short calendar argument on the defendants' motion to dismiss reveals that despite the plaintiff's failure to file her objection timely in the clerk's office and the defendants' refusal to waive any objection to the plaintiff's failure to comply with the rules of practice, the court permitted the plaintiff to present extensive argument to oppose the motion to dismiss.

neglect. We conclude that the court properly dismissed the action on the basis of the facts presented by the defendants.[15]

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss [is] de novo." (Internal quotation marks omitted.) *Waterbury Twin, LLC* v. *Renal Treatment Centers–Northeast, Inc.*, 292 Conn. 459, 466–67, 974 A.2d 626 (2009). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *Merrill* v. *NRT New England, Inc.*, 126 Conn. App. 314, 318, 12 A.3d 575, cert. granted on other grounds, 300 Conn. 925, 15 A.3d 629 (2011).[16] "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those

[15] This court may "sustain a right decision although it may have been placed on a wrong ground." (Internal quotation marks omitted.) *LaBow* v. *LaBow*, 69 Conn. App. 760, 761 n.2, 796 A.2d 592, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002).

[16] Inasmuch as this opinion will become precedent, it is important to emphasize that the issue in this case is not whether the trial court had subject matter jurisdiction. Without question the court had jurisdiction to hear the action and to adjudicate whether the plaintiff could avail herself of the accidental failure of suit statute. We digress to bring to the attention of the bar and the trial court, again, that a motion to dismiss is not the appropriate procedural means to challenge an action commenced pursuant to the accidental failure of suit statute. The appropriate challenge is "by way of a properly pleaded special defense; see Practice Book § 10-50 . . . ." *LaBow* v. *LaBow*, 85 Conn. App. 746, 750, 858 A.2d 882 (2004), cert. denied, 273 Conn. 906, 868 A.2d 747 (2005).

"[A]lthough a motion to dismiss may not be the proper procedural vehicle for asserting that an action is not saved by . . . § 52-592, our Supreme Court has held that a trial court may properly consider a motion to dismiss in such circumstances when the plaintiff does not object to the use of the motion to dismiss." *Henriquez* v. *Allegre*, 68 Conn. App. 238, 241 n.6, 789 A.2d 1142 (2002). In the present action, the plaintiff did not object to the motion to dismiss on procedural grounds.

alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Mulcahy* v. *Mossa*, 89 Conn. App. 115, 120, 872 A.2d 453, cert. denied, 274 Conn. 917, 879 A.2d 894 (2005).

"[If] the complaint is supplemented by *undisputed facts* established by affidavits submitted in support of the motion to dismiss . . . other types of undisputed evidence . . . and/or public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings." (Citations omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 651–52, 974 A.2d 669 (2009). "[W]here a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts." Id., 652. "Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous." (Internal quotation marks omitted.) *Merrill* v. *NRT New England, Inc.*, supra, 126 Conn. App. 318.

In the present action, the court found that the complaint failed to allege facts to establish that the first action was not tried on its merits due to inadvertence, mistake or excusable neglect. Although the plaintiff

failed to file an objection to the defendants' motion to dismiss in accordance with Practice Book § 10-31, the transcript of the short calendar hearing reveals that the court was solicitous of the self-represented plaintiff. See *Keating* v. *Ferrandino*, 125 Conn. App. 601, 604, 10 A.3d 59 (2010) ("policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally" [internal quotation marks omitted]). Even though the defendants did not waive an objection to the plaintiff's failure to file a timely objection to their motion to dismiss, the court read the plaintiff's objection, asked questions pertaining to it and permitted the plaintiff to present an argument. In its memorandum of decision, the court made certain factual findings, including that the plaintiff failed to comply with discovery orders in the first action, and drew a legal conclusion on the basis of those findings.

The parties do not dispute that the plaintiff failed to respond to the defendants' written discovery and to attend a deposition noticed for December 29, 2008. At short calendar, the plaintiff argued that she did not answer the defendants' discovery on the basis of advice she purportedly received from Thomas Willcutts, an attorney whom she had retained for the purposes of settlement negotiations only.[17] The court found that the plaintiff "was nonsuited in [the first action] for failure to comply with discovery. She then moved to open the nonsuit and that was denied by [Judge Domnarski] because at that point she still had not complied with the discovery. [Judge Domnarski] did not accept that what she did or failed to do was inadvertent, a mistake,

---

[17] The plaintiff represented that Willcutts advised her that there was no reason to comply with the defendants' discovery because the case likely would settle. The plaintiff did not present testimony or an affidavit from Willcutts at the short calendar argument supporting that assertion.

or excusable neglect."[18] At the time of the short calendar argument, the plaintiff still had not complied with the defendants' written discovery, and for that reason, Judge Rittenband concluded that she could not take advantage of the accidental failure of suit statute. The issue before us is whether that conclusion is legally correct.

The accidental failure of suit statute provides that if any action has failed one or more times to be tried on its merits because the action has been dismissed for want of jurisdiction, or if a judgment of nonsuit has been rendered, the plaintiff may commence a new action within one year after the determination of the original action. General Statutes § 52-592 (a).[19] Our Supreme Court has "emphasized [however] that § 52-592 (a) does not authorize the reinitiation of all actions not tried on . . . [their] merits . . . . In concluding that even disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a), we have noted the fact-sensitive nature of the inquiry and held that, [t]o enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was a matter of form in the sense that the plaintiff's noncompliance with a court order occurred in circumstances

[18] The plaintiff failed to appeal from the judgment of nonsuit or the denial of her motion to open the judgment of nonsuit. The defendants do not claim that the plaintiff is collaterally estopped from claiming that she failed to comply with discovery due to inadvertence, mistake or excusable neglect. The issue is therefore not before us.

[19] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because . . . the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

such as *mistake, inadvertence or excusable neglect.*
. . . Indeed, even in the disciplinary context, only egregious conduct will bar recourse to § 52-592." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Plante* v. *Charlotte Hungerford Hospital,* 300 Conn. 33, 50–51, 12 A.3d 885 (2011).

In the disciplinary dismissal context, our Supreme Court has "observed that, [a] trial court, for example, might find an attorney's misconduct to be egregious if the attorney represented that his nonappearance was caused by difficulties with his car without disclosing that he had ready access to alternative transportation. A trial court might make a similar finding if, in one case, the attorney repeatedly, and without credible excuse, delayed scheduled court proceedings. Nonappearances that interfere with proper judicial management of cases, and cause serious inconvenience to the court and to opposing parties, are categorically different from a mere failure to respond to a notice of dormancy pursuant to Practice Book § 251 [now § 14-3] . . . or a single failure to appear, in a timely fashion, after a luncheon recess." (Citation omitted; internal quotation marks omitted.) Id., 50 n.17.

The crux of the plaintiff's claim at the hearing on the motion to dismiss is that there was a misunderstanding among counsel for the defendants, Willcutts and the plaintiff as to whether the first action would be settled. She claimed that Willcutts told her that there was a possible settlement discussion and that it was meaningless for her to respond to the defendants' discovery requests, but she did not indicate when Willcutts allegedly told her.[20] The plaintiff referred to no court document or conversation with the defendants' counsel that

[20] To refute the plaintiff's claim, the defendants submitted to the court an October 29, 2008 letter their counsel, Charles H. Walsh, sent to the plaintiff. In the letter, Walsh told the plaintiff that the attorney trial referee unsuccessfully attempted to mediate a settlement and therefore he did not see any reason for additional mediation. The defendants also submitted to the court

could have been interpreted mistakenly to have excused her from complying with the November 3, 2008 court order to comply with written discovery. Importantly, the plaintiff overlooks Judge Prescott's November 3, 2008 order that she comply with the defendants' written discovery. When a party is under a court order, she may not resort to self-help.

"In Connecticut, the general rule is that a court order must be followed until it has been modified or successfully challenged. . . . Our Supreme Court repeatedly has advised parties against engaging in self-help and has stressed that an order of the court must be obeyed until it has been modified or successfully challenged." (Citations omitted; internal quotation marks omitted.) *Behrns* v. *Behrns*, 124 Conn. App. 794, 809, 6 A.3d 184 (2010). There is no motion or request in the file that the plaintiff sought a modification of Judge Prescott's discovery order that she comply with the defendants' written discovery by December 15, 2008. And even if the plaintiff were confused as to whether she was required to comply with that order, Judge Elgo's judgment of nonsuit should have made clear to her that failing to comply with written discovery was done at her peril. Certainly, at the end of January, 2009, the plaintiff should have been aware that she needed to comply with the order, yet she failed to do so. The plaintiff waited almost four months to file a motion to set aside the judgment of nonsuit, but did not help her cause because she still had not complied with the written discovery. We conclude therefore that Judge Rittenband properly granted the defendants' motion to dismiss. The record in this case reveals that the facts before the court demonstrated that the first action was

a December 23, 2008 letter from Walsh to Willcutts in which Walsh told Willcutts that litigation in the first action was going to continue while the plaintiff attempted to effect a settlement in the matter.

not nonsuited due to mistake, inadvertence or excusable neglect. The court therefore properly concluded that the plaintiff was prevented from availing herself of the accidental failure of suit statute.

The plaintiff cites *Stevenson* v. *Peerless Industries, Inc.*, 72 Conn. App. 601, 806 A.2d 567 (2002), in support of her claim that her failure to comply with the court order was excusable neglect. In *Stevenson*, George Stevenson brought an action against Peerless Industries, Inc., and Peerless Sales Company (collectively Peerless) for injuries he sustained when a wall mounted television fell on him. Id., 603. Peerless sent discovery requests to Stevenson, which he failed to answer. Id. Peerless filed a motion for a judgment of nonsuit for failure to comply with the discovery requests. Id. Stevenson did not respond to the motion for a judgment of nonsuit, and the trial court granted the motion. Id. Stevenson did not attempt to open the judgment of nonsuit, but he did bring an action pursuant to the accidental failure of suit statute and Peerless moved to dismiss. Id., 604.

In his objection to the motions to dismiss, Stevenson argued that he had "failed to respond to the discovery requests due to miscommunication with one of his attorneys, who practiced in Pennsylvania and had been retained to handle [Stevenson's] workers' compensation claim. [Stevenson] argued that he could not comply adequately with the discovery requests without receiving certain documents and assistance from Pennsylvania counsel. [Stevenson] attached copies of facsimiles that he had sent to Pennsylvania counsel seeking assistance to comply with discovery. Apparently, Pennsylvania counsel misunderstood the time frame for answering discovery requests in Connecticut. [Stevenson] also argued that once he received the answers to the discovery requests from Pennsylvania counsel, counsel's secretary failed to recognize them as such

and failed to prepare a motion to open the judgment, as instructed. Moreover, [Stevenson] claimed that the mistakes that occurred in pursuing his case did not constitute 'egregious conduct' and that he therefore was entitled to avail himself of the accidental failure of suit statute." Id., 604–605.

In reversing the trial court's judgment granting the motion to dismiss, this court held that "it should be noted that this case does not involve a situation that resulted in considerable delay or inconvenience to the court or to opposing parties. . . . Moreover, [Stevenson] has provided a credible excuse for his failure to respond, that is, miscommunication with his Pennsylvania counsel. It does not appear that [Stevenson] failed to respond to Peerless' request for dilatory reasons or as a delay tactic, particularly when viewed in light of the fact that this case has not been plagued by years of unnecessary litigation. We further note that [Stevenson] asserts that he is prepared to comply with all requests." (Citation omitted.) Id., 610.

The facts of *Stevenson* are distinguishable from the facts of the present action in a number of ways. Peerless never sought an order of compliance against Stevenson. The plaintiff, however, was ordered by Judge Prescott to answer the defendants' written discovery by December 15, 2008, approximately one month before she was nonsuited. The plaintiff was not represented by counsel concerning her litigation with the defendants and, therefore, was not the victim of her lawyer's errors. The only thing the plaintiff points to in support of her claim that she is entitled to avail herself of the accidental failure of suit statute is her wholly unsupported claim that Willcutts told her it would be meaningless for her to comply with the court order.[21] Finally, there is nothing

[21] We note that most often a settlement offer is predicated on the information provided by a plaintiff in response to written discovery. "Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and if it can be provided by the disclos-

in the record which suggests that the plaintiff, unlike Stevenson, is willing to comply with any discovery requests. On the basis of our review of the record, we conclude that the court properly determined that the plaintiff's failure to comply with the November 3, 2008 court order was not attributable to any mistake, inadvertence or excusable neglect and therefore properly granted the motion to dismiss.

The judgment is affirmed.

In this opinion ALVORD, J., concurred.

MCDONALD, J., dissenting. As the majority states, the trial court granted the defendants' motion to dismiss finding that the plaintiff had not pleaded any facts supporting claims of inadvertence, mistake or excusable neglect to support the application of General Statutes § 52-592 (a) and because the plaintiff failed to file her opposition to the motion to dismiss at least five days before the motion was to be considered. The majority, however, upholds the dismissal on other grounds, not affirming on the grounds relied on by the trial court. In doing so, the majority observes "[t]his court may 'sustain a right decision although it may have been placed on a wrong ground.'" See footnote 15 of the majority opinion.

I

The majority upholds the dismissal "on the basis of the facts presented by the defendants" at the hearing of the motion to dismiss, where there was no evidentiary hearing. The plaintiff argued before the trial court at the hearing of the motion to dismiss that there was a question of material fact concerning miscommunication, unanswered telephone calls and misunderstanding

---

ing party or person with substantially greater facility than it could otherwise be obtained by the party seeing disclosure. . . ." Practice Book § 13-2.

about her deposition because the plaintiff was between attorneys at the time. She claimed she had moved to quash her deposition subpoena but her motion had not been heard. The plaintiff also claimed the defendants emphasized her failure to appear at the deposition in seeking dismissal. The plaintiff also claimed that she did not, after the nonsuit, respond to the written discovery requests on advice of counsel. At the hearing, counsel for the defendants told the trial court that because an attorney, who had been retained only for settlement purposes, approached him about the deposition date, what that counsel said was "irrelevant," and the defendants' counsel stated that the plaintiff would have to get the court's permission to change the date.

At the hearing on the motion to dismiss in this case, the plaintiff stated she had evidence she could present concerning her deposition scheduled unilaterally and absolutely by the defendants on December 26, 2008, in one of the major retail periods.[1] The court did not respond to her offer after the defendants' attorney admitted he had discussions with an attorney for the plaintiff about the deposition being noticed for December 26, and contested some of the plaintiff's assertions concerning the deposition. Also, during the hearing, the defendants' counsel told the trial court that the deposition was a "red herring," it was something the plaintiff had thrown out, and the real issue was that the plaintiff failed to comply with the court's order of discovery. The defendants' counsel also stated regarding the deposition that "[the plaintiff] failed to show up for. And, again, no explanation was given as to why she didn't show up."

---

[1] "For some retailers, the holiday season can represent anywhere between 25-40 [percent] of annual sales. In 2010, holiday sales represented 19.4 [percent] of total retail industry sales." National Retail Federation, "Holiday FAQs," available at http://www.nrf.com/modules.php?name=Pages&sp id= 1140 (last visited May 1, 2012).

The defendants stated in their brief that the plaintiff's nonsuit of January 21, 2009, resulted from the plaintiff's failure to comply with a court order of November 3, 2008.[2] Contrary to the defendants' brief and counsel's red herring statements, the plaintiff's failure to appear for her deposition was also made a ground by the defendants to move for dismissal, which led to the nonsuit and later dismissal. Appended to the defendants' brief in this case is a copy of the defendants' objection to the plaintiff's motion to set aside the January, 2009 nonsuit. In paragraph 21 of the objection, the defendants stated: "On January 6, 2009, the state moved for a judgment of dismissal based upon the [p]laintiff's failure to comply with the court's November 4, [sic] 2008 order *and the [p]laintiff Worth's failure to appear for her deposition.*" (Emphasis added.) The record in this appeal also contains a full copy of that objection which included paragraph 21.[3]

After some other dialogue with the defendants' counsel and the plaintiff, the court improperly recessed the hearing without taking any evidence. Thereafter, the trial court made no factual finding that the plaintiff could not present proof required by § 52-592 (a), but instead dismissed the plaintiff's case because she did not plead any facts supporting a finding of inadvertence, mistake or excusable neglect.

Our Supreme Court has held a motion to dismiss, as in this case, cannot be decided in a factual vacuum and that a plaintiff must be given an opportunity to make a factual showing that the prior dismissal occurred in

---

[2] In the defendants' appendix to their brief, in paragraph 16 of the defendants' objection to the motion to open the nonsuit the following appears: "On November 3, 2008, the court ordered the plaintiffs to provide responses to the state's interrogatories and production request on or before December 15, 2008."

[3] See objection to motion to open, exhibit 2 appended to the defendants' memorandum of law in support of their motion to dismiss.

circumstances such as mistake, inadvertence or excusable neglect. *Ruddock* v. *Burrowes*, 243 Conn. 569, 576–77, 706 A.2d 967 (1998); see also *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 50, 12 A.3d 885 (2011). Our Supreme Court has held the parties are entitled to an evidentiary hearing on a critical factual issue. *Conboy* v. *State*, 292 Conn. 642, 652, 974 A.2d 669 (2009); see also *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 422 n.17, 35 A.3d 188 (2012). In this case, the critical factual issue is whether the dismissal of the previous case was the result of blatant and egregious conduct on the part of the plaintiff. Anything less than blatant and egregious conduct would not support the harsh result of dismissing her case. See *Plante* v. *Charlotte Hungerford Hospital*, supra, 51.

In upholding the dismissal, the majority cites *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525–27, 294 A.2d 633 (1972), for its justification in taking judicial notice of parts of the record of *Worth* v. *Korta*, 132 Conn. App. 154, 31 A.3d 804 (2011), a related appeal. *Karp* held that a court may take judicial notice of other court files, but held the court could not consider them as part of the record in the case at bar. *Karp* v. *Urban Redevelopment Commission*, supra, 528. In this case, the result arrived at by the majority is reached by considering material outside the record of this case at the time the case was argued. Moreover, the materials considered by the majority did not constitute undisputed evidence[4] establishing conclusively that the plaintiff acted in a blatant and egregious manner as required by *Conboy* v. *State*, supra, 292 Conn. 652, cited by the majority, to dispense with an evidentiary hearing.[5] At

[4] Relying on material in *Worth* v. *Korta*, supra, 132 Conn. App. 154, the majority finds the parties' agreement that December 26, 2008, was the date of the deposition was wrong, in that it was scheduled for December 29, 2008.

[5] The majority points to written materials found in *Worth* v. *Korta*, 132 Conn. App. 154, supra, as supporting dismissal. It notes in footnote 10 of its opinion, that on December 5, 2008, the plaintiff was to choose a deposition date of December 23 or 29, 2008. The majority also notes in footnote 9 of

best, these documents may raise an issue of fact but do not prove it conclusively. See id., 656. Also, the issue of whether the plaintiff's conduct was blatant and egregious concerned the plaintiff's state of mind which is "not ordinarily subject to determination on the basis of documentary proof alone." (Internal quotation marks omitted.) Id., 654. The issue also goes to the merits of the § 52-592 action, which should not be determined in considering a pretrial motion to dismiss. Id., 653.

Moreover, the trial court made no finding that the plaintiff could not prove her conduct was not blatant and egregious. The majority concludes, however, "[t]he record in this case reveals that the facts before the court demonstrate that the first action was not nonsuited due to mistake, inadvertence or excusable neglect." A court cannot arrive at the conclusion as to the critical fact whether the plaintiff acted in a blatant and egregious manner to cause the nonsuit, in the absence of evidence. Arguments of counsel and self-represented parties are not evidence. I therefore believe the majority, when exercising the powers of a trial court, did so without evidence.

its opinion that the plaintiff wished to have her deposition rescheduled because she wished to have a new attorney present and due to inconvenient timing in the only two busiest weeks for retail business. She stated she could be available by mid-January if no settlement is reached. The plaintiff added, "I will not attempt to avoid my deposition due to a deviation in the scheduling order."

As the majority also notes, on December 26, 2008, the plaintiff filed a motion to quash her subpoena for the deposition on December 29, 2008, in part because other defendants' counsel would participate. Other grounds given for the motion to quash, such as the claim that the deposition was scheduled at the busiest time of the retail season for the plaintiff, were not set out by the majority.

The majority also referred in footnote 20 of its opinion to correspondence with the plaintiff from counsel for the defendants to the effect that counsel could not consent to her request for a continuance without the plaintiff proposing a trial date and to counsel's letter to Attorney Willcutts dated December 23, 2008, stating that the case would proceed.

Finally, an appellate court has no jurisdiction to arrive at factual conclusions as a fact finder does. The trial court alone has the jurisdiction to hear and evaluate evidence. Our Supreme Court has stated, when asked to substitute its conclusion as to a factual finding, its refusal to do so "does not constitute an abdication of our responsibility for appellate review. To the contrary it evidences a recognition on our part that by constitutional charter we are limited to corrections of errors of law; *Styles* v. *Tyler*, 64 Conn. 432, 450, 30 A. 165 (1894) . . . ." (Internal quotation marks omitted.) *Kaplan* v. *Kaplan*, 186 Conn. 387, 392, 441 A.2d 629 (1982). In *Kaplan*, the court stated: "The fact-finding function is vested in the trial court . . . . Appellate review . . . is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." Id., 391. In *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 676–77, 443 A.2d 486 (1982), the court stated: "It is well settled that [t]his court cannot find facts, nor, in the first instance, draw conclusions of facts from primary facts found, but can only review such findings to see whether they might legally, logically and reasonably be found. *Wiegert* v. *Pequabuck Golf Club, Inc.*, 150 Conn. 387, 391, 190 A.2d 43 [1963]; *State* v. *Hudson*, [154 Conn. 631, 634, 228 A.2d 132 (1967)]. *State* v. *Clark*, 160 Conn. 555, 556, 274 A.2d 451 (1970); see *Kaplan* v. *Kaplan*, [supra, 391]; *Brody* v. *Dunnigan*, 162 Conn. 605, 608, 291 A.2d 227 (1971); *Waterford* v. *Grabner*, 155 Conn. 431, 434, 232 A.2d 481 (1967); *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals*, 143 Conn. 257, 261, 121 A.2d 637 (1956); *Claffey* v. *Bergin*, 121 Conn. 695, 696, 182 A. 16 (1936)."

This court has stated: "[The Appellate Court] cannot find facts or draw conclusions of fact from primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be

found thereby establishing that the trial court could reasonably conclude as it did. . . . It is . . . not the onus of this court to search the record and transcripts to determine whether the trier of fact could have reached a conclusion other than the one it did. Rather, this court must focus on the conclusion of the trial court, as well as the path by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Citations omitted.) *Zolan, Bernstein, Dworken & Klein* v. *Milone*, 1 Conn. App. 43, 47, 467 A.2d 938 (1983).

Because I do not agree with the majority, I would accordingly reverse the judgment of dismissal.

## II

### A

The majority does not affirm the dismissal on a finding the plaintiff failed to plead facts to support a claim of inadvertence, mistake or excusable neglect. See footnote 15 of the majority opinion. I would reverse the judgment of dismissal granted on these grounds.

The only reference to facts regarding § 52-592 in the self-represented plaintiff's complaint is the statement "[p]ursuant to . . . § 52-592 . . . the plaintiffs . . . file complaints against [the] defendants." Dismissal, however, required a finding that the plaintiff could not establish, as a matter of law and fact, the requisites for § 52-592 relief, rather than there was a defective pleading. See *Gurliacci* v. *Mayer*, 218 Conn. 531, 544, 590 A.2d 914 (1991).

There is a substantial difference in the requirements and the effect between granting a dismissal and granting a motion to strike, which would be the proper means to attack a failure to plead essential facts. In this case, I would reverse a judgment of dismissal based on insufficient pleadings grounds and I would not find that the

self-represented plaintiff consented[6] to the use of the motion to dismiss. Our Supreme Court recently addressed the "ongoing confusion" regarding the distinction between the jurisdictional and statutory basis for the motions, and referred to the inconsistent cases addressing the use of motions to dismiss and motions to strike as instructive. *In re Jose B.*, 303 Conn. 569, 572, 34 A.3d 975 (2012). A self-represented layperson could not be expected to recognize these distinctions and knowingly consent to the dismissal hearing if she failed to object.[7]

In *In re Jose B.*, our Supreme Court stated: "We now agree with the concurring justice in *In re Matthew F.* [297 Conn. 673, 708, 4 A.3d 248 (2010)] that, to the extent that these cases are inconstant, the better rule is set forth in *Gurliacci* [supra, 218 Conn. 531]. . . . Accordingly, we conclude that the failure to allege an essential fact under a particular statute goes to the legal sufficiency of the complaint, not to the subject matter jurisdiction of the trial court. . . . This conclusion is consistent with the rule that every presumption is to be indulged in favor of jurisdiction . . . is consistent with the judicial policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court . . . by allowing the litigant, if possible, to amend the complaint to correct the defect . . . and avoids the bizarre result that

---

[6] Our Supreme Court recently noted in *State* v. *Ryder*, 301 Conn. 810, 819 n.5, 23 A.3d 694 (2011), that "[i]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . A party who, unskilled in [legal] matters, seeks to remedy some claimed wrong by invoking processes which are at best technical and complicated, is very ill advised and assumes a most difficult task. Our courts, however, have always been lenient toward such a one, relaxing the rules wherever it can be done with propriety . . . ." (Citation omitted; internal quotation marks omitted.)

[7] The plaintiff's written objection to the dismissal at the trial court, however, can not be found in the record. See footnote 8 of this dissenting opinion.

the failure to prove an essential fact at trial deprives the court of subject matter jurisdiction." (Citations omitted; internal quotation marks omitted.) *In re Jose B.*, supra, 303 Conn. 579.

## B

The majority does not affirm the judgment of dismissal on the trial court's finding that the plaintiff failed to file her written objection to the defendants' motion to dismiss more than five days before the scheduled hearing date as required by Practice Book § 10-31. I believe this was also improper.

The hearing was not actually delayed by the filing on the day of the argument.[8] The procedural deficiency did not result in the matter not being resolved within a day by the trial court. Nor does it appear that the defendants were prejudiced by the late filing since neither party sought a continuance.

In *Burton* v. *Planning Commission*, 209 Conn. 609, 616–18, 553 A.2d 161 (1989) (*Shea, J.*, dissenting), Justice Shea would have afforded room for the trial court to exercise reasonable discretion, considering lack of any prejudice to a defendant and the fact there was no delay, to alleviate the harshness of a mandatory dismissal of the plaintiff's case. Id. Justice Shea cited the design of our rules to interpret them liberally where strict adherence will work injustice. Id., 617–18. Justice Shea also noted foresightedly in his dissent that the Supreme Court opinion merely invited legislative intervention when the rules needlessly thwarted the goal of arriving at the merits. In *Burton*, Justice Shea found a needlessly unjust outcome where the plaintiff, although self-represented, was an attorney. See id., 616–18. In

---

[8] As the majority recognizes, the plaintiff's opposition memorandum was in the trial court's possession at the hearing.

this case, the plaintiff was attempting to represent herself and was not an attorney. Our Chief Justice has publically addressed the plight of self-represented parties in difficult economic times forced to represent themselves and the need for our court system to ensure that there be justice.[9]

On these grounds, I respectfully dissent.

---

[9] "I . . . believe that we . . . have to recognize that access is no longer just making sure that poor people have legal representation . . . . I believe that we need to address this trend of self-representation . . . . Until that issue is resolved, however, I feel strongly that it is the Judicial Branch's responsibility to ensure that justice is accessible in our state courts." Chief Justice Chase T. Rogers: The Newman Lecture on Law and Justice, Connecticut Lawyer, Vol. 20, No. 9 (May/June 2010) p. 29.