******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANGELA D. CIOTTONE *v.* JONATHAN CIOTTONE
(AC 36530)

Lavine, Sheldon and Bishop, Js.

*Argued October 15, 2014—officially released January 20, 2015*

(Appeal from Superior Court, judicial district of Hartford, Prestley, J. [motion to modify]; Bozzuto, J. [motion for contempt])

*Angela D. Ciottone*, self-represented, the appellant (plaintiff).

*Keith Yagaloff*, for the appellee (defendant).

*Opinion*

BISHOP, J. In this appeal from the trial court's judgment of contempt and its attendant order of counsel fees, the plaintiff, Angela D. Ciottone, claims that, because the terms of her marital dissolution judgment and pertinent postjudgment orders were not clear and unambiguous, the court's finding of contempt and its allied remedial orders were not legally warranted. We affirm the judgment of the trial court.

The plaintiff's marriage to the defendant, Jonathan Ciottone, was dissolved on January 19, 2007, on terms based on the parties' written agreement. Relevant to our present consideration, the parties' agreement included a multipage parenting plan regarding their son, Jonathan, Jr., then nearly three years old. The parties returned to court in 2011, both seeking modifications of the dissolution judgment. Following a hearing, the court, *Prestley*, *J.*, issued extensive written orders, dated May 25, 2012, which provided specific contours to the parties' continuing shared custody of Jonathan, Jr. The court's orders included, inter alia, the following provision: "The mother shall schedule nonemergency medical appointments for the child. She shall provide adequate and immediate notice to the father with enough time to allow for him, at his option, to attend. The mother shall inquire in writing as to the father's availability for appointments in advance of any scheduling or rescheduling. Emergency appointments may be scheduled by either parent subject to immediate notification to the other." Elsewhere, the court's order further included a provision regarding summer vacation and camp for Jonathan, Jr., that modified the existing order for each parent to have two nonconsecutive weeks of vacation with Jonathan, Jr. The order stated: "Absent mutual written agreement as to the child's attendance at summer camp, the mother may first select a summer camp for the child. The father may then select a second camp. . . . Absent mutual written agreement, the child shall not attend more than two (2) camps in the summer, and neither camp shall exceed three (3) weeks. Beginning in 2013, the summer vacation schedule shall be exchanged by March 1; the summer camp selections shall be exchanged by May 1."

On August 1, 2012, by agreement of the parties,[1] the court, *Carbonneau*, *J.*, issued the following written order: "The mother and father shall alternate attending nonemergency medical and dental appointments for Jonathan, Jr., per the scheduling requirements in . . . the 5/25/12 orders. If the child becomes sick in the care of either parent, that parent shall be responsible for obtaining appropriate treatment or making appointments. Absent an emergency, both parents shall not attend medical or dental appointments together." Additional written orders were issued by Judge Prestley on November 16, 2012, pursuant to motions filed by the

plaintiff. There, the court denied the plaintiff's motion to modify child support and made detailed orders regarding reimbursements for Jonathan, Jr.'s extracurricular and health care expenses. As to the latter, the court ordered: "Although the original judgment provided that the plaintiff would provide health insurance for the child, the defendant's wife's policy currently provides health insurance for the child's benefit. The defendant shall not be responsible for any portion of the extraordinary cost of the plaintiff's health [insurance] premium. The defendant may continue to pay unreimbursed expenses out of his wife's flexible spending account without any credit for this due to the plaintiff." Additionally, the court ordered: "Insurance information on all insurance maintained that covers the child's health care expenses shall be given to the child's providers. It is presumed that the health care providers will submit claims first to the primary carrier and then to the secondary carrier. The parties shall then divide unreimbursed medical expenses or co-pays equally."[2]

Following the court's November 16, 2012 order, the plaintiff, by motion dated December 4, 2012, sought: "Clarification, Reconsideration, and Reargument." Through this motion, the plaintiff sought a further order as to whether "a child medical expense covered under the mother's health care plan with the exception of a co-pay can then also be claimed to be an unreimbursed medical expense under father's plan." After a hearing, this motion was denied by the court by order dated April 25, 2013.[3]

Thereafter, the defendant filed a motion for contempt dated April 26, 2013, and the plaintiff filed a motion for contempt dated May 21, 2013, a motion for compensation dated October 2, 2013, a motion for attorney's and expert's fees dated October 20, 2013, and a motion to modify child support dated November 4, 2013. It is the court's response to the defendant's motion for contempt that is the subject of this appeal.[4]

In his motion for contempt, the defendant made the following claims: (1) that the plaintiff had failed to reimburse him for certain expenses incurred on behalf of Jonathan, Jr., including expenses for his activities as well as for certain health care expenses, in accordance with the provisions of the dissolution judgment and subsequent orders; (2) that the plaintiff had failed to utilize the defendant's employment-related health insurance as secondary insurance coverage for Jonathan, Jr.; (3) that the plaintiff had violated the court's orders regarding the obligation of each parent to notify the other of his and her preferred dates of summer vacation with Jonathan, Jr., and the intended dates for his camp; (4) that the plaintiff had failed to adhere to the court's order that the parties alternate taking Jonathan, Jr., to his medical appointments; (5) that the plaintiff had failed to keep to the parenting schedule; and (6) that the

plaintiff, by her conduct, had undermined his parental rights and failed to adhere to the judgment's co-parenting provisions.

Over the course of several days, the court, *Bozzuto*, *J.*, heard testimony regarding the parties' respective motions. The court orally rendered its decision from the bench on January 27, 2014. Judge Bozzuto began by making the following observation: "The issues subject of the defendant's motion for contempt have been addressed and adjudicated by the court extensively on prior dates, to no avail. Preliminarily, the court would note that it found the plaintiff's testimony and presentation to the court riddled with distortions and exaggerations." Judge Bozzuto continued: "It's the mundane that the plaintiff distorts and manipulates into something it is not. The plaintiff also manipulates the plain language [of] orders in an effort to exert control and/or diminish the defendant." The court concluded: "As to defendant's motion [for contempt], the court finds that the defendant has met his burden of proof, and the court finds the plaintiff in wilful violation of the court's orders."

As to the defendant's specific contempt allegations, the court made the following findings and orders: "[T]he plaintiff has failed, without excuse, to comply with the court's order to pay to the defendant $951.50 and also failed to reimburse the defendant for winter basketball, a medical bill . . . an orthodontic retainer, and another bill for medical services. All totaled, the court finds the plaintiff owes the defendant $296.98, which is in addition to the $951.50. Further, the plaintiff misused and manipulated the summer camp and vacation schedule. Additionally, the plaintiff, through her tortured reading, has clearly violated the court's order to alternate all nonemergency medical appointments of the minor child. Also, the plaintiff has failed to submit any remaining unreimbursed medical expenses through the defendant's insurance as secondary insurance for the minor child."

In addition to making a finding of the plaintiff's wilful violation of its orders, the court entered the following remedial orders: "One, the sum of $296.91 plus $951.50 shall be paid by the plaintiff to the defendant by way of the defendant being relieved of his $300 quarterly payment to the plaintiff for the next four full payments. Additionally, the fifth quarterly payment shall be reduced by $48.48.[5]

"Two, the plaintiff shall, within fourteen days, notify in writing, with a certified copy to defendant's counsel, all of the child's medical providers that her insurance, with all appropriate information, is the primary insurance for the child and that the defendant's insurance, with all appropriate information, is the secondary insurance for the minor child, to be processed in accordance therewith. The plaintiff shall take whatever additional steps are necessary to effectuate the intent of the court's

order dated November 16, 2012. To be clear, all of the child's medical and dental expenses are to be submitted to the plaintiff's insurance first, then to the defendant's insurance second. Any amount left over shall be split between the parties 50-50.

"Three, as for summer camp and vacation, the court orders that the defendant provide the plaintiff with his choice of summer vacation by March 1, 2014. Thereafter, and not before, the plaintiff shall make her summer vacation selection by no later than April 30, 2014. . . .

"The defendant shall have first choice for summer vacation and summer camp for 2014 and 2015 in accordance with the process set forth above. The plaintiff shall have first choice for summer vacation and summer camp for 2016, in accordance with the process set forth above. The parties shall alternate thereafter in accordance with the same schedule.

"Four, as instruction to both parties, the court reiterates the court's order of August 1, 2012, regarding alternating all nonemergency [medical] appointments. An emergency [medical] appointment, which is the only appointment not subject to the alternation, is an appointment that is scheduled for the minor child no more than three hours in advance. All other medical and dental appointments shall be alternated consistent with the court's existing order.

"Five, the court further orders the plaintiff to pay attorney's fees in the amount of $1500 to Attorney Yagaloff, such sum to be paid as follows: $750 within 60 days, and the remaining $750 to be paid within 90 days of today's date." (Footnote added.) This appeal followed.

On appeal, the plaintiff claims, generally, that Judge Prestley's orders that formed the foundation of the defendant's motion for contempt were ambiguous and unclear and, therefore, not amenable to enforcement through the mechanism of the court's contempt power. She claims, as well, that the evidence presented to Judge Bozzuto was insufficient to conclude that she wilfully violated the court's orders regarding unreimbursed health care expenses, submission of claims to the defendant's health insurance, the vacation and camp schedule, and nonemergency medical appointments.

With respect to her obligation to pay certain unreimbursed health care expenses, the plaintiff claims that the term "unreimbursed health care expenses" is unclear and imprecise. Additionally, she claims that the trial court failed, improperly, to clarify whether she was entitled to deduct overpayments made by the defendant's insurance carrier for which she believes she is entitled to credit. Further, the plaintiff claims that the order that the defendant's health insurance serve as secondary coverage is ambiguous, and, moreover, that she did not wilfully violate that order. As to issues

relating to Jonathan, Jr.'s attendance at summer camp and the parties' respective summer vacation schedules with Jonathan, Jr., the plaintiff appears to claim that the court issued its remedial orders on this topic without affording her due process. She fails, however, to brief the manner in which she believes her due process rights were violated. As to alternating nonemergency visits to medical care providers, the plaintiff claims that the evidence adduced at the hearing on this topic was insufficient to warrant the court's contempt finding. In large measure, the plaintiff's brief consists of a rehashing of issues presented to the court during extensive evidentiary hearings that culminated in the subject contempt findings and associated orders.[6]

Our Supreme Court, in the case of *In re Leah S.*, 284 Conn. 685, 935 A.2d 1021 (2007), set forth the parameters of our review of a trial court's finding of contempt in a civil matter. The court stated: "[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) Id., 693–94.

As to the first prong of our analysis, the record makes it apparent that the orders that underlie the defendant's motion for contempt were clear and unambiguous. Second, the record amply supports the court's finding that the plaintiff's failure to abide by the court's orders was wilful.

The first part of the defendant's motion for contempt deals with the plaintiff's failure to pay her share of unreimbursed health care expenses incurred on behalf of Jonathan, Jr. Our review of relevant transcripts reveals that the claim of ambiguity advanced by the plaintiff on review was previously raised by her and was fully, and repeatedly, resolved by the court at hearings in January, April and November of 2013. For example, the court made plain at a hearing on January 28, 2013, that unreimbursed health care expenses for Jonathan, Jr., means those expenses not paid for by the parties' available insurance and that the defendant was entitled to utilize funds in his present wife's flexible spending account to pay his portion of unreimbursed health care expenses.[7] As to the definition of the unreimbursed health care expenses, as previously noted herein, Judge Prestley made that term amply clear to

the parties on January 28, 2013. See footnote 2 of this opinion. For a reasonably educated and attentive litigant, the court's explanation on the record should have been sufficient to make the order regarding unreimbursed health care expenses clear and unambiguous.[8]

The plaintiff claims that she did not wilfully violate this order because she believed she was entitled to certain "set offs." In regard to the specific amounts the court found owing by the plaintiff, the sums of $951.50 and $296.91, the plaintiff's obligation to pay the sum of $951.50 was based on a previous computation by the court. At a hearing on April 29, 2013, Judge Prestley had made an initial finding that the plaintiff owed the sum of $985.50 to the defendant based on her obligation to share unreimbursed health care expenses for Jonathan, Jr., and the court ordered that it be paid at the rate of $100 a month. Later, in the same hearing, Judge Prestley reduced the figure to $951.50, giving the plaintiff a credit of $34 toward this obligation as a result of a net sum owed to the plaintiff by the defendant.[9] Thus, the sum of $951.50 was fixed and definite. Indeed, on a subsequent hearing date on the defendant's motion for contempt, the plaintiff acknowledged this obligation. She explained that she did not pay this amount because she felt entitled to set off against it certain sums she later claimed to have become due to her from the defendant. In determining that the plaintiff's failure to pay the sum of $951.50 was wilful, the court needed to look no further than the transcripts of prior hearings in which the plaintiff had acknowledged her awareness of Judge Prestley's computation, the order that she pay it, and her failure to do so based on her claim of justification.

Judge Bozzuto's finding that the plaintiff wilfully withheld the additional sum of $296.91 finds support in the record as well. At the continued hearing on the contempt motion on January 9, 2014, the defendant testified that the plaintiff owed him an additional $376.50, beyond the sum of $951.50, based on his calculation of the amounts that the plaintiff should have paid to him for her share of Jonathan, Jr.'s unreimbursed health care and activity expenses. After testimony and argument, the court found that the sum of $296.91 was due on the basis of its previous orders. There is ample evidentiary support for the court's determination in this regard.

We now turn to the plaintiff's obligation to utilize her health care insurance as the primary coverage for Jonathan, Jr.'s health related needs and the defendant's health insurance as secondary coverage. The record reflects that, in spite of the clarity of the order, the plaintiff continued to object to it and failed repeatedly to comply with its dictates. At the November 19, 2013 hearing on the defendant's motion for contempt, he testified that health care providers' bills were not being

submitted to his insurance carrier for secondary coverage because the plaintiff had informed the providers not to use the secondary coverage. Judge Bozzuto, of course, was entitled to credit this testimony and to find, on the basis of the testimony, that the plaintiff had violated the court's order in this regard. This order suffers from no ambiguity. The court's finding that the plaintiff wilfully violated it is supported by the record.

Next, with respect to the court's orders regarding the obligation of the parties to notify each other of their intended summer vacation dates by March 1, 2013, and of their desired weeks for enrolling Jonathan, Jr., in summer camp by May 1, 2013, the court heard evidence that, instead of complying with this order, the plaintiff notified the defendant in January, 2013, of the dates of both her intended vacation as well as the summer camp dates before he had the opportunity to indicate his preferred vacation dates.[10] The defendant testified that he protested to the plaintiff that, although she had the first choice for vacation dates in 2013, the order required her to permit him then to choose his vacation time before dates were selected for Jonathan, Jr.'s camp. The defendant testified that, when the plaintiff responded "not in a nice way," he decided to work around the plaintiff's dates, accommodating his vacation dates and his selection of Jonathan, Jr.'s camp dates to the plaintiff's declared schedule, and he notified the plaintiff of the dates he had selected. The defendant testified that, thereafter, the plaintiff unilaterally changed her vacation schedule, and that change encroached on the defendant's summer schedule. The court found that the plaintiff wilfully violated the relevant order regarding summer vacation and camp.

The plaintiff claims that the order was subject to reasonable interpretation. She argues that the requirement that the parties notify each other by March 1st of their vacation schedules, with her having first choice in 2013, and by May 1st of their summer camp selections for Jonathan, Jr., means that those are the latest dates by which to make these elections. She argues that the order, by its terms, does not preclude her from notifying the defendant of her selected dates, all at once, months ahead of time. Additionally, she claimed before the trial court that the late change in her summer plans for herself and for Jonathan, Jr.'s camp was justified by the late dismissal of students due to having to make up snow days.

Contrary to the plaintiff's claim, this order suffers from no ambiguity. On review, we find no fault with the court's assessment of this claim as a mere distortion of a plain order. Similarly, the court's determination that she wilfully violated this order finds ample support in the record. The plaintiff's patent disregard of this order well warranted the court's finding of contempt.

Although not set forth as a distinct claim, the plaintiff

also appears to claim that the court's remedial orders upon finding her in contempt, in some undefined fashion, deprived her of due process. In this claim, she is wide of the mark. Faced with a party in contempt of court, it is within the court's province to fashion appropriate remedial orders. "Courts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Behrns* v. *Behrns*, 124 Conn. App. 794, 821, 6 A.3d 184 (2010). In the case at hand, the court's remedial orders were justified and appropriately tailored to the violations.

In enunciating its orders, the court also found that the plaintiff attempted to distort the requirement that the parties alternate taking Jonathan, Jr., to nonemergency medical appointments and, as a result, the plaintiff was in contempt of those orders. During the hearing on his motion for contempt, the defendant provided the court with an evidentiary basis for its finding that the plaintiff failed, wilfully, to alternate taking Jonathan, Jr., to his scheduled medical appointments. The following exemplifies how the plaintiff distorts the court's order. The plaintiff argued at trial, and persists in claiming on appeal, that because the parent then with physical custody of Jonathan, Jr., has the right to take him for medical care should he be sick, that provision permits her, unilaterally, and without notifying the defendant, to take Jonathan, Jr., to medical care visits to treat certain chronic conditions. The court's response to this claim was apt. The court acted within its discretion in finding that the plaintiff had distorted the common sense meaning of this obligation in order to create a nonexisting ambiguity.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Neither party filed a motion to modify the May 25, 2012 orders. The guardian ad litem, however, requested a status conference, noting: "Despite the [May 25, 2012] orders being clear and concise, conflict between the parties continues; although, the level and source of conflict, depending on which party you speak with, is different."

[2] Although, historically, the parents' relative obligations to maintain health insurance coverage for Jonathan, Jr., changed due to the parties' changed circumstances, at all times relevant to any of the issues presently on appeal, the court's order has been that the plaintiff's employment-related health care insurance would provide primary coverage for Jonathan, Jr., and the defendant's employment-related health care insurance would provide secondary coverage.

[3] A review of the extensive trial court file reveals that, in response to the plaintiff's motion for clarification, the court held a hearing on January 28, 2013, during which Judge Prestley made her order regarding health care insurance amply clear. There, in response to a claim that the court's order was ambiguous as to the meaning of unreimbursed health care expenses, the court stated: "I believe my order said that there was a primary insurer, there was a secondary insurer. The primary would file the claims, get that paid. Secondary would kick in. Whatever's remaining after that would be

called an unreimbursed expense." Subsequently, the plaintiff renewed her motion for clarification, which the court denied on April 25, 2014.

[4] The record reflects that when the court, *Bozzuto, J.*, granted the defendant's motion for contempt on January 27, 2014, the court denied all of the plaintiff's motions. The court's response to the plaintiff's motions is not a subject of this appeal.

[5] After an earlier postjudgment hearing, and in order to resolve a dispute between the parties regarding their respective obligations to pay for Jonathan, Jr.'s extracurricular activities, the court, *Prestley, J.*, had ordered the defendant to pay $300 quarterly to the plaintiff.

[6] As to the court's award of counsel fees, the plaintiff makes no argument that the amount ordered was improper; rather, her claim appears to be limited to an argument that because the court erroneously found her in contempt, there should not have been any ensuing order for counsel fees. To be sure, the court received an affidavit from the defendant's counsel setting forth his hourly rate of $250 and the time encompassed in his representation of the defendant on his contempt motion. The court found the hourly rate to be reasonable and took judicial notice of the amount of time spent in the hearings leading up to the court's findings and orders. Because we affirm the court's contempt order there is no basis to disturb the award of counsel fees.

[7] For all time periods relevant to any of the issues on appeal, the existent court order has been that the plaintiff's health insurance would provide primary coverage for Jonathan, Jr., and the defendant's insurance would be secondary. In addition to his employment related health insurance, the defendant has the benefit of a flexible spending account in his present wife's name. This account is funded by pretax distributions of the present wife's earnings. The court repeatedly explained to the plaintiff that the defendant's use of this fund to meet his obligation toward payment of unreimbursed health care expenses was entirely appropriate.

[8] The record reflects that both parties are attorneys.

[9] In her brief, the plaintiff points out that the court's finding of $951.50 was made on April 29, 2013, after the defendant had filed his motion for contempt. In our view, however, the determination by the court on April 29, 2013, was simply a computation of amounts due from the plaintiff to the defendant on the basis of the existing court order for unreimbursed health care expenses and activities reimbursement. That the amount then presently due was crystallized after the defendant had filed his motion for contempt is of no avail to the plaintiff because, even if the court relied on the prior finding of $951.50 due, the court's contempt finding was based on the plaintiff's failure to comply with the court's prior orders that she pay one half of the unreimbursed health care expenses incurred for Jonathan, Jr., and her proportionate share of expenses for his activities.

[10] The record indicates that the parties agreed, through their marital dissolution agreement, that each would have two nonconsecutive weeks of vacation with Jonathan, Jr., in the summer time until he turned eight years old. The record also indicates that on May 25, 2012, the court issued extensive written orders that included the following order regarding summer vacations and camp: "Summer camp shall not be considered an extracurricular activity. Absent mutual written agreement as to the child's attendance at summer camp, the mother may first select a summer camp for the child. The father may then select a second camp. No camp shall be more than twenty-five (25) miles from the other parent's residence unless mutually agreed upon in advance and in writing. Either party may elect that the child not go to any camp during their selection period. Absent mutual written agreement, the child shall not attend more than two (2) camps in the summer and neither camp shall exceed three (3) weeks. Beginning in 2013, the summer vacation schedule shall be exchanged by March 1; the summer camp selections shall be exchanged by May 1."